**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEXTECH SEMICONDUCTOR, LLC, | |
| PLAINTIFF, | |
| v. | CIVIL ACTION NO.: 7:26-CV-00080 |
| ADVANCED MICRO DEVICES, INC., | **JURY TRIAL DEMANDED** |
| DEFENDANT. | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Nextech Semiconductor, LLC ("Plaintiff" or "Nextech") brings this action for patent infringement against Advanced Micro Devices, Inc. ("AMD" or "Defendant"), for infringement of U.S. Patent Nos. 7,593,202 (the "'202 Patent"), 8,558,591 (the "'591 Patent"), 8,604,889 (the "'889 Patent"), 8,654,488 (the "'488 Patent"), 9,917,588 (the "'588 Patent"), (collectively, the "Asserted Patents"). Nextech, on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

### THE PARTIES

#### A. *Nextech*

1.      Plaintiff Nextech Semiconductor, LLC is a Texas Limited Liability Company with a principal place of business at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.

2.      Nextech is the assignee of dozens of United States and/or foreign patent applications, including but not limited to the Asserted Patents, which were previously owned by affiliates of NXP Semiconductors N.V. (together with its affiliates, "NXP").

3.    NXP is a semiconductor manufacturing and design company based in the Netherlands.  It traces its roots back to the 1940s and 1950s, when its corporate parents Motorola Inc. and Koninklijke Philips N.V. ("Philips") entered the semiconductor industry.[1]

4.    NXP was established in 2006 when it was spun out of Philips's semiconductor business unit.

5.    In 2015, NXP merged with Freescale Semiconductor Inc. ("Freescale") to become "the world's 4th largest semiconductor company and largest automotive supplier."[2]

6.    Freescale itself was formed in 2004 through the spin-off of Motorola's semiconductor division.

7.    Motorola was founded as an American manufacturer with a long history of innovation in communications and electronics technology.  For example, during World War II, Motorola's predecessor company invented AM- and FM-based two-way radio devices that were carried by battlefield soldiers and "credited as being a decisive factor in many Allied victories in the field."   In the 1960's, Motorola partnered with NASA, supplying radio communications technology for the Mariner, Gemini, and Apollo space programs; in fact, the first words from the surface of the moon were relayed to Earth by a Motorola transponder.  In the decades that followed, Motorola released its first microprocessors for use in early personal and workstation computers, and it developed early cellular phones and networks, including the world's first portable commercial handheld cellular phone.[3]

---

[1] *NXP History*, NXP (last visited Jan. 22, 2026), https://www.nxp.com/docs/en/supporting-information/NXP-History.pdf.
[2] *Id*.
[3] Mark Hall, *Motorola, Inc.*, Britannica Money (last visited Jan. 22, 2026), https://www.britannica.com/money/Motorola-Inc.

8.    Motorola became the leading manufacturer of embedded microprocessors, which were used in automotive control units, industrial control systems, and such common items as kitchen appliances, pagers, electronic game systems, routers, laser printers, and handheld personal digital assistants (PDAs).[4]

9.    The successor of Motorola's semiconductor business, Freescale, was similarly a leader in the manufacture of microprocessors and microcontrollers.

10.    Indeed, following NXP's acquisition of Freescale in December 2015, NXP moved from being the number six microcontroller supplier in the world to being number one, with its MCU revenue increasing 116%.[5]

11.    Today, NXP describes its business as follows:

> NXP Semiconductors N.V. is a global semiconductor company and a long-standing supplier in the industry, with over 70 years of innovation and operating history. . . . We provide leading solutions that leverage our combined portfolio of intellectual property, deep application knowledge, process technology and manufacturing expertise in the domains of cryptography-security, high-speed interface, radio frequency (RF), mixed-signal analog-digital (mixed A/D), power management, digital signal processing and embedded system design. Our product solutions are used in a wide range of end market applications including: automotive, industrial & Internet of Things (IoT), mobile, and communication infrastructure. We engage with leading global original equipment manufacturers (OEMs) and sell products in all major geographic regions.[6]

12.    NXP devotes significant resources to research and development.  As of December 31, 2024, approximately 11,600 of NXP's 33,100 employees were "dedicated to research and

---

[4] *Id.*
[5] Gina Roos, *NXP Tops Microcontroller Supplier Ranking*, EE Times (May 1, 2017), https://www.eetimes.com/nxp-tops-microcontroller-supplier-ranking/.
[6] NXP Semiconductors N.V., Annual Report (Form 10-K) at 3 (Feb. 20, 2025), https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.

development of [its] products and solutions (representing 37% of [its] NXP workforce)."[7]  NXP

recorded research and development costs of over $2.4B and $2.3B in 2023 and 2024, respectively.[8]

13.    NXP's pending and issued patents cover many key technologies in the ASIC

(Application Specific Integrated Circuit), manufacturing, memory, packaging, processor, radio

frequency ("RF"), and wireless segments of the semiconductor industry.

14.    NXP has taken steps to protect its intellectual property portfolio.

15.    At least part of NXP's intellectual property strategy has included engaging in

licensing discussions with companies that NXP believes to be using its patented technology

without authorization.  While NXP has secured a number of licenses with semiconductor

companies, there have been holdouts.

16.    One such holdout is Defendant AMD.  Indeed, as discussed more fully below, NXP

contacted AMD and presented it with evidence of AMD's infringement of multiple U.S. patents

then-owned by NXP, including all of the Asserted Patents.

17.    Still, AMD did not obtain a license at that time.

18.    AMD still does not have a license to the Asserted Patents as of the filing of this

Complaint.

19.    That's where Nextech comes in.  Nextech's manager, Chad Hilyard, has over 25

years of intellectual property law and business experience, including significant experience

licensing patents.  Mr. Hilyard has also led teams of highly experienced technology and patent

licensing professionals in the management and licensing of first-class patent portfolios.  Mr.

---

[7] NXP Semiconductors N.V., Annual Report (Form 10-K) at 13 (Feb. 20, 2025),
https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.
[8] NXP Semiconductors N.V., Annual Report (Form 10-K) at 39 (Feb. 20, 2025),
https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.

Hilyard also previously served as Chief Intellectual Property Counsel at Rockstar Consortium, where he and his team were responsible for licensing discussions, litigations, and patent portfolio management for the world-class patent portfolio obtained from Nortel. Prior to that, he was Managing Counsel at LSI Corporation and Agere Systems.

20. Instead of continuing its own resource-intensive licensing or enforcement campaign against AMD and other holdouts, NXP assigned to Nextech a number of relevant U.S. and foreign patents and patent applications, including the Asserted Patents.

### B. *AMD*

21. Defendant Advanced Micro Devices, Inc. is a Delaware corporation with a principal place of business at 2485 Augustine Drive, Santa Clara, California 95054, and doing business in Texas, with multiple offices in this District. AMD has designated the CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 as its agent for service of process.

### JURISDICTION AND VENUE

22. This action includes claims of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

23. AMD is subject to this Court's specific and general jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.*

24. AMD has not disputed this Court's personal jurisdiction over it in recent patent infringement actions filed in this District. *See, e.g.*, *Redstone Logics LLC, v. Advanced Micro Devices, Inc.*, Case No. 7:25-cv-00182-DC-DTG, Dkt. 15 (AMD's Answer) at 4 (W.D. Tex. June 30, 2025); *Advanced Cluster Sys. Inc., v. Advanced Micro Devices, Inc.*, Case No. 7:24-cv-00244-ADA, Dkt. 29 (AMD's Answer) at 2 (W.D. Tex. Jan. 8, 2025).

25.    AMD has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Western District of Texas.

26.    AMD, directly or through subsidiaries or agents, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas and the Western District of Texas that infringe one or more claims of the Asserted Patents (identified further below as the Accused Products).

27.    AMD has placed or contributed to placing infringing products into the stream of commerce knowing or understanding that such products would be sold and used in the United States, including in this District.

28.    AMD has derived substantial revenues from infringing acts in the Western District of Texas, including from the sale and use of the Accused Products identified below.

29.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because AMD is subject to personal jurisdiction in the Western District of Texas and has committed acts of infringement in the Western District of Texas, either directly or through respective agents.

30.    AMD has multiple regular and established places of business in the Western District of Texas, including at: 7171 Southwest Parkway, Austin, Texas 78735; 7000 West William Cannon Drive, Austin, Texas 78735; 1340 Airport Commerce Drive, Austin, Texas 78741; and 12301 Research Blvd., Suite 300, Austin, Texas 78759.[9]

31.    AMD has represented to investors it has "significant operations" in Austin, Texas.[10]

---

[9] *See Corporate Locations*, AMD, https://www.amd.com/en/corporate/locations.html (last visited Jan. 8, 2026).
[10] Advanced Micro Devices, Inc., Annual Report (Form 10-K) at 40 (Feb. 5, 2025).

32.    AMD has admitted in previous patent infringement actions filed against them that venue in this District is proper.  *See, e.g., Redstone Logics LLC, v. Advanced Micro Devices, Inc.*, Case No. 7:25-cv-00182-DC-DTG, Dkt. 15 (AMD's Answer) at 4 (W.D. Tex. June 30, 2025); *Advanced Cluster Sys. Inc. v. Advanced Micro Devices, Inc.*, Case No. 7:24-cv-00244-ADA, Dkt. 29 (AMD's Answer) at 2 (W.D. Tex. Jan. 8, 2025).

33.    AMD is registered to do business in Texas.

34.    AMD has committed acts of infringement in this District.

35.    AMD has employees in Austin, Texas who are responsible for the marketing and sale of products, including the Accused Products, to customers across the country and world.

36.    AMD has employees in Austin, Texas who are responsible for working on the Ryzen™ and Radeon™ product lines, which include the Accused Products identified below. On information and belief, current AMD employees with knowledge relevant to the claims in this case are located in the Western District of Texas and within the State of Texas.  For example, searches of LinkedIn® reveal over 4000 individuals located in Texas that, on information and belief, list AMD as their current employer.

37.    Furthermore, "[i]n recent years, AMD has engaged consultants in . . . Texas" "to monitor legislation of interest in state legislatures and support its advocacy efforts."[11]

38.    AMD's CEO, Dr. Lisa Su, is based in Austin, Texas.

39.    AMD Executive Vice President and Chief Technology Officer, Mark Papermaster, is based in Austin, Texas.

---

[11] *Public Policy Engagement and U.S. Political Activities,* AMD, https://www.amd.com/en/corporate/corporate-responsibility/governance/public-policy-engagement.html (last visited Oct. 31, 2025).

40.    AMD makes, uses, sells, tests, offers to sell, and/or imports infringing products into and/or within the Western District of Texas, including at its Austin locations.  AMD maintains a permanent and/or continuing presence within the Western District of Texas at its Austin locations and has the requisite minimum contacts with the Western District of Texas such that this venue is a fair and reasonable one.  Upon information and belief, AMD has transacted and, at the time of the filing of this Complaint, is continuing to transact business within the Western District of Texas.

## ASSERTED PATENTS

41.    On September 22, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,593,202 (the "'202 Patent") entitled "Electrostatic Discharge (ESD) Protection Circuit for Multiple Power Domain Integrated Circuit."  A copy of the '202 Patent is attached as Exhibit A.

42.    On October 15, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,558,591 (the "'591 Patent") entitled "Phase Locked Loop with Power Supply Control."  A copy of the '591 Patent is attached as Exhibit B.

43.    On December 10, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,604,889 (the "'889 Patent") entitled "Tunable LC Oscillator with Common Mode Voltage Adjustment."  A copy of the '889 Patent is attached as Exhibit C.

44.    On February 18, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,654,488 (the "'488 Patent") entitled "Secondary ESD Circuit."  A copy of the '488 Patent is attached as Exhibit D.

45.    On March 13, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,917,588 (the "'588 Patent") entitled "Level Shifter and Approach Therefor."  A copy of the '588 Patent is attached as Exhibit E.

## FACTUAL BACKGROUND

46.    Nextech presents its claims and allegations herein in conjunction and/or in the alternative. To the extent that certain claims or allegations may be inconsistent with one another, such allegations should be understood to be made in the alternative.

### A. *AMD's Infringing Products*

47.    AMD makes and sells products implementing electrostatic discharge (ESD) protection using at least a secondary ESD circuit.

48.    AMD makes and sells products comprising a level shifter.

49.    AMD makes and sells products comprising active clamps overlapping along a bank of I/O cells.

50.    AMD makes and sells products comprising an adjustable frequency oscillator.

51.    AMD's products implement the above features in a way that infringes one or more of the Asserted Patents.

52.    The "Accused Products" are AMD's products that infringe one or more of the Asserted Patents (as set forth in more detail below), including Radeon Processors and Ryzen Processors.[12]

---

[12] The Accused Products include, without limitation to the listed products or exclusion of products released in the future, Radeon™ AI PRO R9700, Radeon™ PRO W7900 Dual Slot, Radeon™ PRO W7900, Radeon™ PRO W7800 48GB, Radeon™ PRO W7800, Radeon™ PRO W7700, Radeon™ PRO W7600, Radeon™ PRO W7500, Radeon™ PRO W7400, Radeon™ PRO W6800, Radeon™ PRO W6600, Radeon™ PRO W6400, Radeon™ PRO W6600M, Radeon™ PRO W6500M, Radeon™ PRO W6300M, Radeon™ Pro VII, Radeon™ Pro W5700, Radeon™ Pro W5500, Radeon™ PRO W5500M (Mobile), Radeon™ PRO V710, Radeon™ PRO V620, Radeon™ PRO V520, Radeon™ RX 9070 XT, Radeon™ RX 9070, Radeon™ RX 9060 XT, Radeon™ RX 9060 XT (8GB), Radeon™ RX 9060, Radeon™ RX 7900 XTX, Radeon™ RX 7900 XT, Radeon™ RX 7900 GRE, Radeon™ RX 7800 XT, Radeon™ RX 7700 XT, Radeon™ RX 7700, Radeon™ RX 7600 XT, Radeon™ RX 7600, Radeon™ RX 7400, Radeon™ RX

7900M, Radeon™ RX 7800M, Radeon™ RX 7600M XT, Radeon™ RX 7600M, Radeon™ RX 7700S, Radeon™ RX 7600S, Radeon™ RX 6950 XT, Radeon™ RX 6900 XT, Radeon™ RX 6800 XT Midnight Black, Radeon™ RX 6800 XT, Radeon™ RX 6800, Radeon™ RX 6750 XT, Radeon™ RX 6700 XT, Radeon™ RX 6700, Radeon™ RX 6650 XT, Radeon™ RX 6600 XT, Radeon™ RX 6600, Radeon™ RX 6500 XT, Radeon™ RX 6500 XT (4GB), Radeon™ RX 6400, Radeon™ RX 6850M XT, Radeon™ RX 6800M, Radeon™ RX 6700M, Radeon™ RX 6650M XT, Radeon™ RX 6650M, Radeon™ RX 6600M, Radeon™ RX 6550M, Radeon™ RX 6500M, Radeon™ RX 6450M, Radeon™ RX 6300M, Radeon™ RX 6800S, Radeon™ RX 6700S, Radeon™ RX 6600S, Radeon™ RX 6550S, Radeon™ RX 5700 XT 50th Anniversary, Radeon™ RX 5700 XT, Radeon™ RX 5700, Radeon™ RX 5600 XT, Radeon™ RX 5600, Radeon™ RX 5500 XT, Radeon™ RX 5500, Radeon™ RX 5300, Radeon™ RX 5700M, Radeon™ RX 5600M, Radeon™ RX 5500M, Radeon™ RX 5300M, Radeon™ VII, Athlon™ Gold 7220C, Athlon™ Gold 7220U, Athlon™ Silver 7120C, Athlon™ Silver 7120U, Ryzen™ 7 7445HS, Ryzen™ 3 210, Ryzen™ 3 3100, Ryzen™ 3 3300X, Ryzen™ 3 4100, Ryzen™ 3 4300G (OEM Only), Ryzen™ 3 4300GE (OEM Only), Ryzen™ 3 4300U, Ryzen™ 3 5125C, Ryzen™ 3 5300G (OEM Only), Ryzen™ 3 5300GE (OEM Only), Ryzen™ 3 5300U, Ryzen™ 3 5305G, Ryzen™ 3 5305GE, Ryzen™ 3 5400U, Ryzen™ 3 5425C, Ryzen™ 3 5425U, Ryzen™ 3 7320C, Ryzen™ 3 7320U, Ryzen™ 3 7330U, Ryzen™ 3 7335U, Ryzen™ 3 7440U, Ryzen™ 3 8300G, Ryzen™ 3 8300GE, Ryzen™ 3 8440U, Ryzen™ 3 PRO 210, Ryzen™ 3 PRO 4350G, Ryzen™ 3 PRO 4350GE, Ryzen™ 3 PRO 4355G, Ryzen™ 3 PRO 4355GE, Ryzen™ 3 PRO 4450U, Ryzen™ 3 PRO 5350G, Ryzen™ 3 PRO 5350GE, Ryzen™ 3 PRO 5355G, Ryzen™ 3 PRO 5355GE, Ryzen™ 3 PRO 5450U, Ryzen™ 3 PRO 5475U, Ryzen™ 3 PRO 7330U, Ryzen™ 3 PRO 7335U, Ryzen™ 3 PRO 8300G, Ryzen™ 3 PRO 8300GE, Ryzen™ 5 220, Ryzen™ 5 230, Ryzen™ 5 240, Ryzen™ 5 3500 Processor (OEM Only), Ryzen™ 5 3600, Ryzen™ 5 3600X, Ryzen™ 5 3600XT, Ryzen™ 5 4500, Ryzen™ 5 4500U, Ryzen™ 5 4600G, Ryzen™ 5 4600GE (OEM Only), Ryzen™ 5 4600H, Ryzen™ 5 4600U, Ryzen™ 5 4680U Microsoft Surface® Edition, Ryzen™ 5 5500, Ryzen™ 5 5500GT, Ryzen™ 5 5500H, Ryzen™ 5 5500U, Ryzen™ 5 5500X3D, Ryzen™ 5 5560U, Ryzen™ 5 5600, Ryzen™ 5 5600F, Ryzen™ 5 5600G, Ryzen™ 5 5600GE, Ryzen™ 5 5600GT, Ryzen™ 5 5600H, Ryzen™ 5 5600HS, Ryzen™ 5 5600T, Ryzen™ 5 5600U, Ryzen™ 5 5600X, Ryzen™ 5 5600X3D, Ryzen™ 5 5600XT, Ryzen™ 5 5605G, Ryzen™ 5 5605GE, Ryzen™ 5 5625C, Ryzen™ 5 5625U, Ryzen™ 5 6600H, Ryzen™ 5 6600HS, Ryzen™ 5 6600U, Ryzen™ 5 7235HS, Ryzen™ 5 7400, Ryzen™ 5 7400F, Ryzen™ 5 7430U, Ryzen™ 5 7500F, Ryzen™ 5 7520C, Ryzen™ 5 7520U, Ryzen™ 5 7530U, Ryzen™ 5 7533HS, Ryzen™ 5 7535HS, Ryzen™ 5 7535U, Ryzen™ 5 7540U, Ryzen™ 5 7545U, Ryzen™ 5 7600, Ryzen™ 5 7600X, Ryzen™ 5 7600X3D, Ryzen™ 5 7640HS, Ryzen™ 5 7640U, Ryzen™ 5 7645HX, Ryzen™ 5 8400F, Ryzen™ 5 8500G, Ryzen™ 5 8500GE, Ryzen™ 5 8540U, Ryzen™ 5 8600G, Ryzen™ 5 8640HS, Ryzen™ 5 8640U, Ryzen™ 5 8645HS, Ryzen™ 5 9500F, Ryzen™ 5 9600, Ryzen™ 5 9600X, Ryzen™ 5 PRO 215, Ryzen™ 5 PRO 220, Ryzen™ 5 PRO 230, Ryzen™ 5 PRO 3600, Ryzen™ 5 PRO 4650G, Ryzen™ 5 PRO 4650GE, Ryzen™ 5 PRO 4650U, Ryzen™ 5 PRO 4655G, Ryzen™ 5 PRO 4655GE, Ryzen™ 5 PRO 5645, Ryzen™ 5 PRO 5650G, Ryzen™ 5 PRO 5650GE, Ryzen™ 5 PRO 5650U, Ryzen™ 5 PRO 5655G, Ryzen™ 5 PRO 5655GE, Ryzen™ 5 PRO 5675U, Ryzen™ 5 PRO 6650H, Ryzen™ 5 PRO 6650HS, Ryzen™ 5 PRO 6650U, Ryzen™ 5 PRO 7445, Ryzen™ 5 PRO 7530U, Ryzen™ 5 PRO 7535U, Ryzen™ 5 PRO 7540U, Ryzen™ 5 PRO 7545U, Ryzen™ 5 PRO

7640HS, Ryzen™ 5 PRO 7640U, Ryzen™ 5 PRO 7645, Ryzen™ 5 PRO 8500G, Ryzen™ 5 PRO 8500GE, Ryzen™ 5 PRO 8540U, Ryzen™ 5 PRO 8600G, Ryzen™ 5 PRO 8600GE, Ryzen™ 5 PRO 8640HS, Ryzen™ 5 PRO 8640U, Ryzen™ 5 PRO 8645HS, Ryzen™ 5 PRO 9645, Ryzen™ 7 250, Ryzen™ 7 260, Ryzen™ 7 3700X, Ryzen™ 7 3800X, Ryzen™ 7 3800XT, Ryzen™ 7 4700G (OEM Only), Ryzen™ 7 4700GE (OEM Only), Ryzen™ 7 4700U, Ryzen™ 7 4800H, Ryzen™ 7 4800HS, Ryzen™ 7 4800U, Ryzen™ 7 4980U Microsoft Surface® Edition, Ryzen™ 7 5700, Ryzen™ 7 5700G, Ryzen™ 7 5700GE, Ryzen™ 7 5700U, Ryzen™ 7 5700X, Ryzen™ 7 5700X3D, Ryzen™ 7 5705G, Ryzen™ 7 5705GE, Ryzen™ 7 5800 (OEM Only), Ryzen™ 7 5800H, Ryzen™ 7 5800HS, Ryzen™ 7 5800U, Ryzen™ 7 5800X, Ryzen™ 7 5800X3D, Ryzen™ 7 5800XT, Ryzen™ 7 5825C, Ryzen™ 7 5825U, Ryzen™ 7 6800H, Ryzen™ 7 6800HS, Ryzen™ 7 6800U, Ryzen™ 7 7435HS, Ryzen™ 7 7700, Ryzen™ 7 7700X, Ryzen™ 7 7730U, Ryzen™ 7 7735HS, Ryzen™ 7 7735U, Ryzen™ 7 7736U, Ryzen™ 7 7745HX, Ryzen™ 7 7800X3D, Ryzen™ 7 7840HS, Ryzen™ 7 7840HX, Ryzen™ 7 7840U, Ryzen™ 7 8700F, Ryzen™ 7 8700G, Ryzen™ 7 8745HX, Ryzen™ 7 8840HS, Ryzen™ 7 8840HX, Ryzen™ 7 8840U, Ryzen™ 7 8845HS, Ryzen™ 7 9700F, Ryzen™ 7 9700X, Ryzen™ 7 9800X3D, Ryzen™ 7 PRO 250, Ryzen™ 7 PRO 3700, Ryzen™ 7 PRO 4750G, Ryzen™ 7 PRO 4750GE, Ryzen™ 7 PRO 4750U, Ryzen™ 7 PRO 5750G, Ryzen™ 7 PRO 5750GE, Ryzen™ 7 PRO 5755G, Ryzen™ 7 PRO 5755GE, Ryzen™ 7 PRO 5845, Ryzen™ 7 PRO 5850U, Ryzen™ 7 PRO 5875U, Ryzen™ 7 PRO 6850H, Ryzen™ 7 PRO 6850HS, Ryzen™ 7 PRO 6850U, Ryzen™ 7 PRO 6860Z, Ryzen™ 7 PRO 7730U, Ryzen™ 7 PRO 7735U, Ryzen™ 7 PRO 7745, Ryzen™ 7 PRO 7840HS, Ryzen™ 7 PRO 7840U, Ryzen™ 7 PRO 8700G, Ryzen™ 7 PRO 8700GE, Ryzen™ 7 PRO 8840HS, Ryzen™ 7 PRO 8840U, Ryzen™ 7 PRO 8845HS, Ryzen™ 7 PRO 9745, Ryzen™ 9 270, Ryzen™ 9 3900 Processor (OEM Only), Ryzen™ 9 3900X, Ryzen™ 9 3900XT, Ryzen™ 9 3950X, Ryzen™ 9 4900H, Ryzen™ 9 4900HS, Ryzen™ 9 5900 (OEM Only), Ryzen™ 9 5900HS, Ryzen™ 9 5900HX, Ryzen™ 9 5900X, Ryzen™ 9 5900XT, Ryzen™ 9 5950X, Ryzen™ 9 5980HS, Ryzen™ 9 5980HX, Ryzen™ 9 6900HS, Ryzen™ 9 6900HX, Ryzen™ 9 6980HS, Ryzen™ 9 6980HX, Ryzen™ 9 7845HX, Ryzen™ 9 7900, Ryzen™ 9 7900X, Ryzen™ 9 7900X3D, Ryzen™ 9 7940HS, Ryzen™ 9 7940HX, Ryzen™ 9 7945HX, Ryzen™ 9 7945HX3D, Ryzen™ 9 7950X, Ryzen™ 9 7950X3D, Ryzen™ 9 8940HX, Ryzen™ 9 8945HS, Ryzen™ 9 8945HX, Ryzen™ 9 9850HX, Ryzen™ 9 9900X, Ryzen™ 9 9900X3D, Ryzen™ 9 9950X, Ryzen™ 9 9950X3D, Ryzen™ 9 9955HX, Ryzen™ 9 9955HX3D, Ryzen™ 9 PRO 3900, Ryzen™ 9 PRO 5945, Ryzen™ 9 PRO 6950H, Ryzen™ 9 PRO 6950HS, Ryzen™ 9 PRO 7940HS, Ryzen™ 9 PRO 7945, Ryzen™ 9 PRO 8945HS, Ryzen™ 9 PRO 9945, Ryzen™ AI 5 330, Ryzen™ AI 5 340, Ryzen™ AI 5 PRO 340, Ryzen™ AI 7 350, Ryzen™ AI 7 PRO 350, Ryzen™ AI 7 PRO 360, Ryzen™ AI 9 365, Ryzen™ AI 9 HX 370, Ryzen™ AI 9 HX 375, Ryzen™ AI 9 HX PRO 370, Ryzen™ AI 9 HX PRO 375, Ryzen™ AI Max 385, Ryzen™ AI Max 390, Ryzen™ AI Max PRO 380, Ryzen™ AI Max PRO 385, Ryzen™ AI Max PRO 390, Ryzen™ AI Max+ 395, Ryzen™ AI Max+ PRO 395, Ryzen™ AI Z2 Extreme, Ryzen™ Threadripper™ 3960X, Ryzen™ Threadripper™ 3970X, Ryzen™ Threadripper™ 3990X, Ryzen™ Threadripper™ 7960X, Ryzen™ Threadripper™ 7970X, Ryzen™ Threadripper™ 7980X, Ryzen™ Threadripper™ 9960X, Ryzen™ Threadripper™ 9970X, Ryzen™ Threadripper™ 9980X, Ryzen™ Threadripper™ PRO 3945WX, Ryzen™ Threadripper™ PRO 3955WX, Ryzen™ Threadripper™ PRO 3975WX, Ryzen™ Threadripper™ PRO 3995WX, Ryzen™ Threadripper™ PRO 5945WX, Ryzen™ Threadripper™

53.    AMD sells the Accused Products in the United States.

54.    AMD sells the Ryzen Processors in the United States.

55.    AMD sells the Radeon Processors in the United States.

56.    AMD sells the Accused Products in the United States, which are then delivered abroad.

57.    AMD sells the Ryzen Processors in the United States, which are then delivered abroad.

58.    AMD sells the Radeon Processors in the United States, which are then delivered abroad.

59.    AMD offers to sell the Accused Products in the United States.

60.    AMD offers to sell the Ryzen Processors in the United States.

61.    AMD offers to sell the Radeon Processors in the United States.

62.    AMD offers to sell the Accused Products in the United States, which are then delivered abroad.

63.    AMD offers to sell the Ryzen Processors in the United States, which are then delivered abroad.

64.    AMD offers to sell the Radeon Processors in the United States, which are then delivered abroad.

---

PRO 5955WX, Ryzen™ Threadripper™ PRO 5965WX, Ryzen™ Threadripper™ PRO 5975WX, Ryzen™ Threadripper™ PRO 5995WX, Ryzen™ Threadripper™ PRO 7945WX, Ryzen™ Threadripper™ PRO 7955WX, Ryzen™ Threadripper™ PRO 7965WX, Ryzen™ Threadripper™ PRO 7975WX, Ryzen™ Threadripper™ PRO 7985WX, Ryzen™ Threadripper™ PRO 7995WX, Ryzen™ Threadripper™ PRO 9945WX, Ryzen™ Threadripper™ PRO 9955WX, Ryzen™ Threadripper™ PRO 9965WX, Ryzen™ Threadripper™ PRO 9975WX, Ryzen™ Threadripper™ PRO 9985WX, Ryzen™ Threadripper™ PRO 9995WX, Ryzen™ Z1, Ryzen™ Z1 Extreme, Ryzen™ Z2, Ryzen™ Z2 A, Ryzen™ Z2 Extreme, Ryzen™ Z2 Go, along with any newly released versions of AMD products including the same features.

65.    AMD offers to sell the Accused Products in the United States, which are then accounted for tax purposes as non-US sales.

66.    AMD offers to sell the Ryzen Processors in the United States, which are then accounted for tax purposes as non-US sales.

67.    AMD offers to sell the Radeon Processors in the United States, which are then accounted for tax purposes as non-US sales.

68.    AMD markets the Accused Products in the United States.

69.    AMD markets the Ryzen Processors in the United States.

70.    AMD markets the Radeon Processors in the United States.

71.    AMD advertises the Accused Products in the United States.

72.    AMD advertises the Ryzen Processors in the United States.

73.    AMD advertises the Radeon Processors in the United States.

74.    AMD encourages use of the Accused Products in the United States.

75.    AMD encourages use of the Ryzen Processors in the United States.

76.    AMD encourages use of the Radeon Processors in the United States.

77.    AMD instructs third parties on the use of the Accused Products in the United States.

78.    AMD instructs third parties on the use of the Ryzen Processors in the United States.

79.    AMD instructs third parties on the use of the Radeon Processors in the United States.

80.    AMD uses the Accused Products in the United States.

81.    AMD uses the Ryzen Processors in the United States.

82.    AMD uses the Radeon Processors in the United States.

83.    AMD tests the Accused Products in the United States.

84.    AMD tests the Ryzen Processors in the United States.

85.    AMD tests the Radeon Processors in the United States.

86.    AMD designs the Accused Products in the United States.

87.    AMD designs the Ryzen Processors in the United States.

88.    AMD designs the Radeon Processors in the United States.

89.    AMD makes the Accused Products in the United States.

90.    AMD makes the Ryzen Processors in the United States.

91.    AMD makes the Radeon Processors in the United States.

92.    AMD manufactures the Accused Products in the United States.

93.    AMD manufactures the Ryzen Processors in the United States.

94.    AMD manufactures the Radeon Processors in the United States.

95.    AMD assists in the manufacturing of the Accused Products in the United States.

96.    AMD assists in the manufacturing of the Ryzen Processors in the United States.

97.    AMD assists in the manufacturing of the Radeon Processors in the United States.

98.    AMD imports the Accused Products into the United States.

99.    AMD imports the Ryzen Processors into the United States.

100.    AMD imports the Radeon Processors into the United States.

101.    AMD imports the Accused Products into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

102.    AMD imports the Ryzen Processors into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

103.    AMD imports the Radeon Processors into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

104.    AMD facilitates the importation of the Accused Products into the United States.

105.    AMD facilitates the importation of the Ryzen Processors into the United States.

106.    AMD facilitates the importation of the Radeon Processors into the United States.

107.    AMD encourages the importation of the Accused Products into the United States.

108.    AMD encourages the importation of the Ryzen Processors into the United States.

109.    AMD encourages the importation of the Radeon Processors into the United States.

110.    AMD makes available the Accused Products in the United States.

111.    AMD makes available the Ryzen Processors in the United States.

112.    AMD makes available the Radeon Processors in the United States.

113.    AMD places or contributes to placing the Accused Products into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

114.    AMD places or contributes to placing the Ryzen Processors into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

115.    AMD places or contributes to placing the Radeon Processors into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

**B.  _NXP's Interactions with AMD Regarding Licensing_**

116.    NXP contacts other companies that NXP believes are or were using its patented technology to discuss potential licensing.

117. For example, on May 11, 2023, NXP sent a letter to AMD's general counsel (the "AMD Notice Letter"), explaining that NXP had analyzed various AMD products in view of NXP's patent portfolio and determined that AMD requires a license from NXP.

118. The AMD Notice Letter identified fifteen representative patents from NXP's portfolio, including all five Asserted Patents, and explained that one or more AMD products infringe each of the representative patents.

119. The AMD Notice Letter was accompanied by evidence of use documents or claim charts demonstrating the alleged infringement of all five of the Asserted Patents.

120. AMD received the AMD Notice Letter.

121. AMD received the AMD Notice Letter on or around May 11, 2023.

122. AMD received evidence of use documents or claim charts for each of the Asserted Patents.

123. AMD received evidence of use documents or claim charts for each of the Asserted Patents on or around May 11, 2023.

124. From February to May 2024, AMD provided presentations that included rebuttal arguments to at least some of the evidence of use documents or claim charts.

125. In August 2024, NXP provided surrebuttal documents in response to AMD's rebuttal arguments that support for the infringement and validity, including for at least some of the Asserted Patents.

126. NXP provided AMD with ample evidence to conclude that one or more AMD products infringed each of the Asserted Patents.

127. AMD had knowledge of the Asserted Patents by May 11, 2023.

128. AMD had knowledge of the Asserted Patents by May 2024.

129.    AMD had knowledge of the Asserted Patents by August 2024.

130.    AMD had knowledge of NXP's infringement allegations against AMD for the Asserted Patents by May 11, 2023.

131.    AMD had knowledge of NXP's infringement allegations against AMD for the Asserted Patents by May 2024.

132.    AMD had knowledge of NXP's infringement allegations against AMD for the Asserted Patents by August 2024.

133.    Despite this information provided by NXP related to the Asserted Patents, AMD did not enter into a license agreement at that time.

134.    Despite this information provided by NXP related to the Asserted Patents, AMD did not make any changes to its products or processes necessary to stop the infringement alleged in the evidence of use documents.

135.    Despite this information provided by NXP related to the Asserted Patents, AMD continued to make, use, sell, offer for sale, or import into the United States its products in an infringing manner.

### C. *AMD's Vicarious Liability*

136.    AMD's subsidiaries are agents of AMD.

137.    AMD directs and controls the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

138.    AMD authorizes the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

139.    AMD approves the actions and performance of its AMD subsidiaries, including those related to infringement of the Asserted Patents.

140.    AMD conditions benefits derived by its AMD subsidiaries on the performance of activities, including those related to infringement of the Asserted Patents.

141.    AMD specifies the timing and manner of the performance of activities by its AMD subsidiaries, including those related to infringement of the Asserted Patents.

142.    AMD profits from the activities of its AMD subsidiaries.

143.    AMD has the rights, powers, or abilities to cause its AMD subsidiaries to stop or limit their infringing activities.

144.    AMD has not exercised its rights, powers, or abilities to cause its AMD subsidiaries to stop or limit their infringing activities.

145.    AMD is vicariously liable for the infringing activities of its AMD subsidiaries.

146.    AMD has foundry arrangements with Taiwan Semiconductor Manufacturing Company Limited ("TSMC") for the production of wafers for AMD's HPC, FPGA, and Adaptive SoC products.

147.    AMD is also a party to a Wafer Supply Agreement ("WSA") with GlobalFoundries Inc. ("GlobalFoundries"), with respect to wafer purchases for AMD's HPC products at the 12 nm and 14 nm technology nodes.

148.    Additionally, AMD utilizes TSMC, United Microelectronics Corporation ("UMC"), and Samsung Electronics Co., Ltd. ("Samsung") for the production of its integrated circuits (IC) in the form of programmable logic devices.

149.    AMD also outsources board-level graphics product manufacturing to third-party manufacturers (the "Board-Level Graphics Product Manufacturers").

150.     This Complaint shall refer to TSMC, GlobalFoundries, UMC, Samsung, Board-Level Graphics Product Manufacturers, and/or any other entity involved in the manufacture of the Accused Products the "Wafer and Board Manufacturing Facilities."

151.     Wafers for AMD's products are either sorted by the Wafer and Board Manufacturing Facilities or delivered by the Wafer and Board Manufacturing Facilities to AMD's assembly, test, mark, and packaging ("ATMP") partners or subcontractors located in the Asia-Pacific region who package and test AMD's final semiconductor products.

152.     AMD is party to two ATMP joint ventures (collectively, the "ATMP JVs") with Tongfu Microelectronics Co., Ltd.  The ATMP JVs, Siliconware Precision Industries Ltd. ("SPIL"), and King Yuan Electronics Company ("KYEC") provide ATMP services for AMD's products.

153.     Collectively, and together with any other ATMP partners or subcontractors, the entities referred to in the two preceding paragraphs shall be referred to as the "ATMP Facilities."

154.     AMD works with shipping partners and distributors to import the Accused Products into the United States for and/or on behalf of AMD or its customers, including in circumstances where AMD is not listed as the importer of record (collectively, these will be referred to as "Shipping Facilities").

155.     AMD's Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities are agents of AMD.

156.     AMD directs and controls the actions and performance of the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

157.    AMD authorizes the actions and performance of the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

158.    AMD approves the actions and performance of the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

159.    AMD conditions benefits derived by the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities on the performance of activities, including those related to infringement of the Asserted Patents.

160.    AMD specifies the timing and manner of the performance of activities by Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, including those related to infringement of the Asserted Patents.

161.    AMD profits from the activities of Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities.

162.    AMD has the rights, powers, or abilities to cause Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities to stop or limit their infringing activities.

163.    AMD has not exercised its rights, powers, or abilities to cause Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities to stop or limit their infringing activities.

164.    AMD is vicariously liable for the infringing activities of Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities.

165.    AMD's customers include, at least, AMD's resellers, data centers, original equipment manufacturers ("OEMs"), original design manufacturers ("ODMs"), system

integrators, third-party distributors, add-in-board manufacturers ("AIBs"), independent game console and portable gaming devices manufacturers, and contract manufacturers for AMD-branded graphics cards.

166.    AMD's resellers include at least Amazon, AVA Direct Custom Computers, Best Buy, Cyberpower PC, Digital Storm, Falcon Northwest, IBuypower, Micro Center, Newegg, Origin PC, Velocity Micro, Velztorm, Xidax, and Xotic PC.

167.    AMD's customers include at least Amazon, AVA Direct Custom Computers, Best Buy, Cyberpower PC, Digital Storm, Falcon Northwest, IBuypower, Micro Center, Newegg, Origin PC, Velocity Micro, Velztorm, Xidax, and Xotic PC.

168.    AMD's customers include individuals who purchase consumer electronics.

169.    AMD authorizes the actions and performance of its customers, including those related to infringement of the Asserted Patents.

170.    AMD approves the actions and performance of its customers, including those related to infringement of the Asserted Patents.

171.    AMD conditions benefits derived by AMD customers on the performance of activities, including those related to infringement of the Asserted Patents.

172.    AMD specifies the timing and manner of the performance of activities by AMD customers, including those related to infringement of the Asserted Patents.

173.    AMD profits from the activities of AMD customers.

174.    AMD has the rights, powers, or abilities to cause AMD customers to stop or limit their infringing activities.

175.    AMD has not exercised its rights, powers, or abilities to cause AMD customers to stop or limit their infringing activities.

176.    AMD is vicariously liable for the infringing activities of AMD customers.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 7,593,202

177.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

178.    U.S. Patent No. 7,593,202 (the '202 Patent), entitled "Electrostatic Discharge (ESD) Protection Circuit for Multiple Power Domain Integrated Circuit," was legally and duly issued on September 22, 2009. *See* Ex. A.

179.    Nextech owns all rights, title, and interest in the '202 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

180.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '202 Patent.  For example, NXP provided AMD with actual notice of its infringement prior to the filing of this lawsuit.

181.    The '202 Patent is valid, enforceable, and directed to patentable subject matter.

182.    AMD has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '202 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

183.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

184.    For purposes of showing infringement of the '202 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

185.    Claim 1 of the '202 Patent recites: "An integrated circuit comprising." To the extent that this preamble is limiting, the Accused Products meet this element.

186.    The Accused Products include integrated circuits.

187.    The Accused Products for the '202 Patent include at least AMD's Radeon Processors.

188.    AMD's Radeon Processors include electrostatic discharge (ESD) circuits.

189.    AMD's Radeon RX 6600 is an Accused Product.

190.    AMD's Radeon RX 6600 includes electrostatic discharge (ESD) circuits.

191.    AMD's Radeon RX 6600 includes an integrated circuit. See:



AMD's Radeon RX 6600 PCB



AMD's Radeon RX 6600 die functional blocks (annotated)

192.    Claim 1 of the '202 Patent recites: "a first power domain," and "a second power

domain." The Accused Products meet this element.

193.    For example, AMD's Radeon RX 6600 includes a first power domain and a second power domain. See:



AMD's Radeon RX 6600 circuit diagram of PCIe Interface

194.    AMD's Radeon RX 6600 includes the power domain VDDg/VSSb.

195.    AMD's Radeon RX 6600 includes the power domain VDDi/VSSb.

196.    Claim 1 of the '202 Patent recites: "a bank of input/output (I/O) cells coupled to said first and second power domains, including a first plurality of active clamps for said first power domain and a second plurality of active clamps for said second power domain wherein said first and second pluralities of active clamps overlap along said bank of I/O cells."  The Accused Products meet this element.

197.    For example, AMD's Radeon RX 6600 comprises a bank of input/output (I/O) cells (an example of a bank of I/O cells is annotated in purple and an example of an I/O cell is annotated in green) coupled to said first and second power domains. See:



AMD's Radeon RX 6600 die layout (annotated)

198.    Each PCIe Lane corresponds to an I/O cell.

199.    A PCIe Lane includes an input/output buffer and an input buffer block.

200.    The input/output buffer is coupled to the power domain VDDg/VSSb and the power domain VDDi/VSSb. See:



### 3.6 INPUT_OUTPUT_BUFFER
Input Output Buffer

AMD's Radeon RX 6600 circuit diagram of the input/output buffer

201.    The input/output buffer is coupled to VDDg, VDDi, and VSSb.

202.    AMD's Radeon RX 6600 further comprises a first plurality of active clamps for said first power domain and a second plurality of active clamps for said second power domain wherein said first and second pluralities of active clamps overlap along said bank of I/O cells.

203.    For example, AMD's Radeon RX 6600 comprises ESDc_0 (annotated in red) and ESDb_1 (annotated in blue), which overlap along said bank of I/O cells. See:



AMD's Radeon RX 6600 die layout (annotated)



AMD's Radeon RX 6600 die layout (annotated)

204.    ESDb_1 includes active clamps for the power domain VDDg/VSSb.  P326 is an active clamp.  See:



AMD's Radeon RX 6600 circuit diagram of ESDb



AMD's Radeon RX 6600 circuit diagram of PCIe Interface

205.    ESDc_0 includes active clamps for the power domain VDDi/VSSb.  P322 is an active clamp.  See:



AMD's Radeon RX 6600 circuit diagram of ESDc



AMD's Radeon RX 6600 circuit diagram of PCIe Interface

206.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '202 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

207.    In addition or in the alternative, AMD has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, and/or other parties for the Accused Products.  AMD is therefore vicariously liable for these actions.

208.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '202 Patent under 35 U.S.C. §§ 271(a).

209.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '202 Patent under 35 U.S.C. § 271(b).

210.    AMD indirectly infringes the '202 Patent because it has induced and continues to induce third parties, including as the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, AMD customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

211.    AMD induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

212.    For example, AMD publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products.  As another example, AMD facilitates, coordinates, and/or collaborates with intermediary entities

(e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to AMD customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

213.    AMD took the above actions intending to cause infringing acts by these third parties.

214.    AMD has known of the '202 Patent since at least May 11, 2023, when NXP sent AMD the Notice Letter, which identified the '202 Patent and was accompanied by evidence of use documents.

215.    If AMD did not know that the actions it encouraged constituted infringement of the '202 Patent, AMD was willfully blind as to its inducing infringement of others.  AMD subjectively believed that there was a high probability that others would infringe the '202 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

216.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '202 Patent under 35 U.S.C. § 271(b).

217.    AMD's infringement of the '202 Patent has been willful and egregious and continues to be willful and egregious.

218.    AMD's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from AMD the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

219.    AMD's infringement of the '202 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 8,558,591

220.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

221.    U.S. Patent No. 8,558,591 (the '591 Patent), entitled "Phase Locked Loop with Power Supply Control," was legally and duly issued on October 15, 2013. *See* Ex. B.

222.    Nextech owns all rights, title, and interest in the '591 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

223.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '591 Patent.  For example, NXP provided AMD with actual notice of its infringement prior to the filing of this lawsuit.

224.    The '591 Patent is valid, enforceable, and directed to patentable subject matter.

225.    AMD has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '591 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

226.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

227.    For purposes of showing infringement of the '591 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

228.    Claim 1 of the '591 Patent recites: "A phase locked loop (PLL) comprising."  To the extent that this preamble is limiting, the Accused Products meet this element.

229.    The Accused Products include PLLs.

230.    The Accused Products for the '591 Patent include at least AMD's Radeon Processors and Ryzen Processors.

231.    AMD's Radeon Processors include PLLs.

232.    AMD's Radeon RX 6600 is an Accused Product.

233.    AMD's Radeon RX 6600 includes PLLs.  See:



AMD's Radeon RX 6600 PCB



AMD's Radeon RX 6600 die functional blocks (annotated)



AMD's Radeon RX 6600 layout of PCIe Interface (annotated)



AMD's Radeon RX 6600 circuit diagram of PCIe Interface

234.    Claim 1 of the '591 Patent recites: "a phase frequency detector powered by a first analog supply voltage."  The Accused Products meet this element.

235.    For example, AMD's Radeon RX 6600 includes a phase frequency detector (an example of which is annotated in red) powered by a first analog supply voltage. See:



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)

236.    The phase frequency detector in AMD's Radeon RX 6600 is powered by VREG[3].

237.    VREG[3] is an analog supply voltage.

238.    Claim 1 of the '591 Patent recites: "a charge pump coupled to the phase frequency detector, the charge pump powered by a second analog supply voltage, different from the first analog supply voltage."  The Accused Products meet this element.

239.    For example, AMD's Radeon RX 6600 comprises a charge pump (an example of which is annotated in blue) coupled to the phase frequency detector (an example of which is annotated in red), the charge pump powered by a second analog supply voltage, different from the first analog supply voltage. See:



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)

240.    The charge pump in AMD's Radeon RX 6600 is powered by VREG[2].

241.    VREG[2] is an analog supply voltage.

242.    VREG[2] is different from VREG[3].

243.    Claim 1 of the '591 Patent recites: "a voltage controlled oscillator (VCO) coupled to the charge pump, the VCO powered by a third analog supply voltage, different from the first analog supply voltage and different from the second analog supply voltage, wherein a frequency of the VCO is controlled by a control voltage."  The Accused Products meet this element.

244.    For example, AMD's Radeon RX 6600 comprises a VCO (an example of which is annotated in green) coupled to the charge pump (an example of which is annotated in blue), the VCO powered by a third analog supply voltage, different from the first analog supply voltage and different from the second analog supply voltage, wherein a frequency of the VCO is controlled by a control voltage. See:



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)

245.    The VCO in AMD's Radeon RX 6600 is powered by VREG[1].

246.    VREG[1] is an analog supply voltage.

247.    VREG[1] is different from VREG[2].

248.    VREG[1] is different from VREG[3].

249.    A frequency of the VCO is controlled by a control voltage.  For example, a frequency of the VCO is controlled by VCPa.  As another example, a frequency of the VCO is controlled by VCPb.  See:



AMD's Radeon RX 6600 circuit diagram of PLLa



AMD's Radeon RX 6600 circuit diagram of VCOa



AMD's Radeon RX 6600 circuit diagram of VARACTOR_ARRAYa



AMD's Radeon RX 6600 circuit diagram of VARACTOR_ARRAYa

250.    Claim 1 of the '591 Patent recites: "a supply voltage provider having a first circuit node coupled to a fourth analog supply voltage, a second circuit node which provides the first analog supply voltage, a third circuit node which provides the second analog supply voltage, and a fourth circuit node which provides the third analog supply voltage."  The Accused Products meet this element.

251.    For example, AMD's Radeon RX 6600 comprises a supply voltage provider having a first circuit node (an example of which is annotated in red) coupled to a fourth analog supply voltage, a second circuit node (an example of which is annotated in blue) which provides the first analog supply voltage, a third circuit node (an example of which is annotated in green) which provides the second analog supply voltage, and a fourth circuit node (an example of which is annotated in orange) which provides the third analog supply voltage.  See:



AMD's Radeon RX 6600 circuit diagram of Power Source (annotated)



AMD's Radeon RX 6600 circuit diagram of Power Source (annotated)



AMD's Radeon RX 6600 circuit diagram of Power Source (annotated)

252.    VDDh is an analog supply voltage.

253.    Claim 1 of the '591 Patent recites: "a current compensator coupled to one of the second, third, or fourth circuit nodes, wherein the current compensator provides a variable current draw from the one of the second, third, or fourth circuit nodes based on the control voltage."  The Accused Products meet this element.

254.    For example, AMD's Radeon RX 6600 comprises a current compensator coupled to the third circuit node (providing the second analog supply voltage, e.g., VREG[2]), which provides a variable current draw from the third circuit node based on the control voltage (e.g., VCPa, VCPb).  See:





AMD's Radeon RX 6600 circuit diagram of Bias Source B

255.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '591 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

256.    In addition or in the alternative, AMD has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, and/or other parties for the Accused Products.  AMD is therefore vicariously liable for these actions.

257.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '591 Patent under 35 U.S.C. §§ 271(a).

258.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '591 Patent under 35 U.S.C. § 271(b).

259.    AMD indirectly infringes the '591 Patent because it has induced and continues to induce third parties, including as the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, AMD customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

260.    AMD induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move

by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

261.    For example, AMD publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, AMD facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to AMD customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

262.    AMD took the above actions intending to cause infringing acts by these third parties.

263.    AMD has known of the '591 Patent since at least May 11, 2023, when NXP sent AMD the Notice Letter, which identified the '591 Patent and was accompanied by evidence of use documents.

264.    If AMD did not know that the actions it encouraged constituted infringement of the '591 Patent, AMD was willfully blind as to its inducing infringement of others. AMD subjectively believed that there was a high probability that others would infringe the '591 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

265.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '591 Patent under 35 U.S.C. § 271(b).

266.    AMD's infringement of the '591 Patent has been willful and egregious and continues to be willful and egregious.

267.    AMD's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from AMD the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

268.    AMD's infringement of the '591 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 8,604,889

269.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

270.    U.S. Patent No. 8,604,889 (the '889 Patent), entitled "Tunable LC Oscillator with Common Mode Voltage Adjustment," was legally and duly issued on December 10, 2013. *See* Ex. C.

271.    Nextech owns all rights, title, and interest in the '889 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

272.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '889 Patent.  For example, NXP provided AMD with actual notice of its infringement prior to the filing of this lawsuit.

273.    The '889 Patent is valid, enforceable, and directed to patentable subject matter.

274.    AMD has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '889 Patent by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing the Accused Products into this District and elsewhere in the United States.

275. Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product. Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

276. For purposes of showing infringement of the '889 Patent, all the models and product lines of the Accused Products include the same or substantially the same semiconductor structure which are formed in the same way, and therefore infringe in the same way.

277. Claim 1 of the '889 Patent recites: "An adjustable frequency oscillator comprising." To the extent that this preamble is limiting, the Accused Products meet this element.

278. The Accused Products include an adjustable frequency oscillator.

279. The Accused Products for the '889 Patent include at least AMD's Radeon Processors.

280. AMD's Radeon Processors include adjustable frequency oscillators.

281. AMD's Radeon RX 6600 is an Accused Product.

282. AMD's Radeon RX 6600 includes an adjustable frequency oscillator. For example, AMD's Radeon RX 6600 includes an adjustable frequency oscillator comprising VCOa. See:



AMD's Radeon RX 6600 PCB



AMD's Radeon RX 6600 die functional blocks (annotated)



AMD's Radeon RX 6600 circuit diagram of Phase Locked Loop

283.    VCOa is part of an adjustable frequency oscillator.  See:



AMD's Radeon RX 6600 circuit diagram of VCOa

284.    Claim 1 of the '889 Patent recites: "a variable supply source."  The Accused Products meet this element.

285.    For example, AMD's Radeon RX 6600 comprises a variable supply source (an example of which is annotated in red). See:



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)

286.    Claim 1 of the '889 Patent recites: "a tank circuit coupled to the variable supply source and comprising: an inductance; and a first variable capacitance circuit comprising MOS switches configured to change a frequency of the adjustable frequency oscillator."  The Accused Products meet this element.

287.    For example, AMD's Radeon RX 6600 includes VCOa, which includes a tank circuit (an example of which is annotated in green) that is coupled to the variable supply source (an example of which is annotated in red) and comprises an inductance (an example of which is annotated in orange) and a first variable capacitance circuit (an example of which is annotated in blue). See:



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)

288.    The first variable capacitance circuit includes MOS switches (examples of which
are annotated in red) configured to change a frequency of the adjustable frequency oscillator. See:



AMD's Radeon RX 6600 circuit diagram of VARACTOR_ARRAYa (annotated)



AMD's Radeon RX 6600 circuit diagram of VARACTOR_ARRAYa (annotated)

289.    Claim 1 of the '889 patent recites: "a cross-coupled transistor pair coupled to the tank circuit." The Accused Products meet this element.

290.    For example, AMD's Radeon RX 6600 includes VCOa, which includes a cross-coupled transistor pair (an example of which is annotated in purple) coupled to the tank circuit (an example of which is annotated in green). See:



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)



AMD's Radeon RX 6600 circuit diagram of VCOa (annotated)

291.    N1 and N2 are transistors.

292.    N1 and N2 are cross-coupled.

293.    N1 and N2 form a cross-coupled transistor pair.

294.    Claim 1 of the '889 patent recites: "a common mode voltage adjustment circuit coupled to the cross-coupled transistor pair and to a reference voltage."  The Accused Products meet this element.

295.    For example, AMD's Radeon RX 6600 includes VREGb, which is a common mode voltage adjustment circuit coupled to the cross-coupled transistor pair and to a reference voltage.

296.    VREG[1] is a common mode voltage of VCOa.  See:



AMD's Radeon RX 6600 circuit diagram of VCOa



AMD's Radeon RX 6600 circuit diagram of VCOa

297.    VREG[1] is adjusted by the VREGb circuit. See:



AMD's Radeon RX 6600 circuit diagram of POWER_SOURCEa



AMD's Radeon RX 6600 circuit diagram of VREGb

298.   VREGb is coupled to VCOa, and thus coupled to the cross-coupled transistor pair.

299.   VREGb is coupled to a reference voltage, for example, the output voltage of LPFa.

See:



AMD's Radeon RX 6600 circuit diagram of VREGb

300.  Claim 1 of the '889 Patent recites: "a control circuit configured to, when the frequency is changed, adjust the common mode voltage to reduce state changes of the MOS switches, wherein the common mode voltage increases when the frequency is reduced, and decreases when the frequency is increased."  The Accused Products meet this element.

301.  For example, AMD's Radeon RX 6600 includes a control circuit (an example of which is annotated in red) configured to, when the frequency is changed, adjust the common mode voltage (e.g., VREG[1]) to reduce state changes of the MOS switches, wherein the common mode voltage increases when the frequency is reduced, and decreases when the frequency is increased. See:



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)



AMD's Radeon RX 6600 circuit diagram of PLLa (annotated)



AMD's Radeon RX 6600 circuit diagram of POWER_SOURCEa



AMD's Radeon RX 6600 circuit diagram of VREGb



AMD's Radeon RX 6600 circuit diagram of VCOa

302.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '889 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

303.    In addition or in the alternative, AMD has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, and/or other parties for the Accused Products.  AMD is therefore vicariously liable for these actions.

304.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '889 Patent under 35 U.S.C. §§ 271(a).

305.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '889 Patent under 35 U.S.C. § 271(b).

306.    AMD indirectly infringes the '889 Patent because it has induced and continues to induce third parties, including as the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, AMD customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

307.    AMD induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

308.    For example, AMD publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products.  As another example, AMD facilitates, coordinates, and/or collaborates with intermediary entities

(e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to AMD customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

309.     AMD took the above actions intending to cause infringing acts by these third parties

310.     AMD has known of the '889 Patent since at least May 11, 2023, when NXP sent AMD the Notice Letter, which identified the '889 Patent and was accompanied by evidence of use documents.

311.     If AMD did not know that the actions it encouraged constituted infringement of the '889 Patent, AMD was willfully blind as to its inducing infringement of others.  AMD subjectively believed that there was a high probability that others would infringe the '889 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

312.     Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '889 Patent under 35 U.S.C. § 271(b).

313.     AMD's infringement of the '889 Patent has been willful and egregious and continues to be willful and egregious.

314.     AMD's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from AMD the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

315.     AMD's infringement of the '889 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

**COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 8,654,488**

316.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

317.    U.S. Patent No. 8,654,488 (the '488 Patent), entitled "Secondary ESD Circuit," was legally and duly issued on February 18, 2014. *See* Ex. D.

318.    Nextech owns all rights, title, and interest in the '488 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

319.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '488 Patent.  For example, NXP provided AMD with actual notice of its infringement prior to the filing of this lawsuit.

320.    The '488 Patent is valid, enforceable, and directed to patentable subject matter.

321.    AMD has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '488 Patent by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing the Accused Products into this District and elsewhere in the United States.

322.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

323.    For purposes of showing infringement of the '488 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure and design, and therefore infringe in the same way.

324.    Claim 1 of the '488 Patent recites: "An integrated circuit device comprising."  To the extent that this preamble is limiting, the Accused Products comprise this element.

325.    The Accused Products are integrated circuit devices.

326.    The Accused Products for the '488 Patent include at least AMD's Ryzen Processors.

327.    AMD's Ryzen Processors include electrostatic discharge (ESD) circuits.

328.    AMD's Ryzen 9 5900X is an Accused Product.

329.    AMD's Ryzen 9 5900X includes electrostatic discharge (ESD) circuits.

330.    AMD's Ryzen 9 5900X is an integrated circuit device. See:



AMD Ryzen 9 5900X package top



AMD Ryzen 9 5900X package top with lid removed



AMD Ryzen 9 5900X die functional blocks (annotated)

331.    Claim 1 of the '488 Patent recites: "a primary electrostatic discharge (ESD) circuit connected between a power supply pad and a ground pad of the integrated circuit device, and configured to couple an ESD pulse from the power supply pad to ground in response to a voltage level at the power supply pad achieving a main trigger voltage level."  The Accused Products comprise this element.

332.    For example, AMD's Ryzen 9 5900X comprises ESDa, which is a primary ESD circuit. See:



AMD Ryzen 9 5900X layout of Interface PLL (annotated)



AMD Ryzen 9 5900X circuit diagram of Interface PLL



AMD Ryzen 9 5900X circuit diagram of ESDa

333.    ESDa is connected between a power supply pad and a ground pad of AMD's Ryzen 9 5900X.

334.    VDDf corresponds to a power supply pad.

335.    VSSb corresponds to a ground pad.

336.    ESDa is configured to couple an ESD pulse from the power supply pad to ground in response to a voltage level at the power supply pad achieving a main trigger voltage level.

337.    Claim 1 of the '488 Patent recites: "a buffer circuit coupled and configured and arranged to receive regulated power from the power supply pad and being susceptible to activation in response to an ESD pulse at which the main trigger voltage level is reached." The Accused Products comprise this element.

338.    AMD's Ryzen 9 5900X comprises a buffer circuit (an example of which is annotated in blue), which is coupled and configured and arranged to receive regulated power from the power supply pad and being susceptible to activation in response to an ESD pulse at which the main trigger voltage level is reached. See:



AMD Ryzen 9 5900X circuit diagram of VREGa (annotated)

339.    VREG corresponds to regulated power.

340.    VDDf corresponds to the power supply pad.

341.    The buffer circuit receives regulated power from the power supply pad.

342.    The buffer circuit is susceptible to activation in response to an ESD pulse at which the main trigger voltage level is reached.

343.    Claim 1 of the '488 Patent recites: "a secondary ESD circuit coupled to a node between the buffer circuit and the primary ESD circuit."  The Accused Products comprise this element.

344.    For example, AMD's Ryzen 9 5900X comprises ESDb, which is a secondary ESD circuit. See:



AMD Ryzen 9 5900X circuit diagram of Power Source



AMD Ryzen 9 5900X circuit diagram of ESDb

345.    ESDb is coupled to a node between the buffer circuit and the primary ESD circuit.

For example, ESDb is coupled to VREG, which is a node between the buffer circuit and ESDa.

See:



AMD Ryzen 9 5900X circuit diagram of Power Source



AMD Ryzen 9 5900X circuit diagram of VREGa



AMD Ryzen 9 5900X circuit diagram of Interface PLL

346.    Claim 1 of the '488 Patent recites: "the secondary ESD circuit including a field-effect transistor (FET) including gate, source and drain electrodes, the source and drain electrodes being connected respectively at first and second nodes across the buffer circuit, with the first and

second nodes configured and arranged to provide regulated power, relative to the power supply pad and ground pad, to the buffer circuit." The Accused Products comprise this element.

347.    For example, ESDb includes N216. N216 is a FET including gate, source and drain electrodes. See:



AMD Ryzen 9 5900X circuit diagram of ESDb

348.    The source and drain electrodes of N216 are connected respectively at first and second nodes across the buffer circuit, with the first and second nodes configured and arranged to provide regulated power, relative to the power supply pad and ground pad, to the buffer circuit.

349.    For example, the source and drain electrodes of N216 are connected respectively at VDD and VSSb, which correspond to VREG and VSSb, which are across the buffer circuit and provide regulated power to the buffer circuit. See:



AMD Ryzen 9 5900X circuit diagram of ESDb



AMD Ryzen 9 5900X circuit diagram of Power Source



AMD Ryzen 9 5900X circuit diagram of VREGa

350.    Claim 1 of the '488 Patent recites: "the secondary ESD circuit including . . . a trigger circuit connected to the FET gate, the trigger circuit being configured to detect electrostatic pulses and, in response to detecting an ESD pulse at a secondary trigger voltage level, to turn on the FET to pass current through the FET and limit a voltage drop across the buffer circuit."  The Accused Products comprise this element.

351.    For example, ESDb includes a trigger circuit (an example of which is annotated in blue) connected to the gate electrode of N216, which detects electrostatic pulses and, in response to detecting an ESD pulse at a secondary trigger voltage level, turns on N216 to pass current through N216 and limit a voltage drop across the buffer circuit. See:



AMD Ryzen 9 5900X circuit diagram of ESDb (annotated)



AMD Ryzen 9 5900X circuit diagram of ESDb (annotated)

352.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '488 Patent, based on the importation, sale, offer for sale, or use of the Accused Products which comprise each and every element of claim 1 of the '488 Patent.

353.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '488 Patent under 35 U.S.C. §§ 271(a).

354.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '488 Patent under 35 U.S.C. § 271(b).

355.    AMD indirectly infringes the '488 Patent because it has induced and continues to induce third parties, including as the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, AMD customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

356.    AMD induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

357.    For example, AMD publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products.  As another example, AMD facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused

Products into components that are sold to AMD customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

358.    AMD took the above actions intending to cause infringing acts by these third parties.

359.    AMD has known of the '488 Patent since at least May 11, 2023, when NXP sent AMD the Notice Letter, which identified the '488 Patent and was accompanied by evidence of use documents.

360.    If AMD did not know that the actions it encouraged constituted infringement of the '488 Patent, AMD was willfully blind as to its inducing infringement of others.  AMD subjectively believed that there was a high probability that others would infringe the '488 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

361.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '488 Patent under 35 U.S.C. § 271(b).

362.    AMD's infringement of the '488 Patent has been and continues to be willful and egregious.

363.    AMD had knowledge of the '488 Patent and knew its actions constituted infringement of the '488 Patent, or at least subjectively believed that there was a high probability that the '488 Patent existed and took deliberate actions to avoid learning of the '488 Patent.

364.    AMD's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from AMD the damages sustained by Plaintiff as a result of these wrongful acts in an amount subject to proof at trial.

365.    AMD's infringement of the '488 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 9,917,588

366.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

367.    U.S. Patent No. 9,917,588 (the '588 Patent), entitled "Level Shifter and Approach Therefor," was legally and duly issued on March 13, 2018. *See* Ex. E.

368.    Nextech owns all rights, title, and interest in the '588 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

369.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '588 Patent.  For example, NXP provided AMD with actual notice of its infringement prior to the filing of this lawsuit.

370.    The '588 Patent is valid, enforceable, and directed to patentable subject matter.

371.    AMD has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '588 Patent by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing the Accused Products into this District and elsewhere in the United States.

372.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

373.    For purposes of showing infringement of the '588 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

374.    Claim 1 of the '588 Patent recites: "An apparatus comprising."  The Accused Products meet this element.

375.    The Accused Products for the '588 Patent include at least AMD's Radeon Processors.

376.    The Accused Products include level shifters.

377.    The Accused Products include multiple power domains.

378.    AMD's Radeon Processors include level shifters.

379.    AMD's Radeon Processors include multiple power domains.

380.    AMD's Radeon RX 6600 is an Accused Product.

381.    AMD's Radeon RX 6600 includes level shifters.

382.    AMD's Radeon RX 6600 includes multiple power domains.

383.    Claim 1 of the '588 Patent recites: "a first circuit configured and arranged to provide differential outputs that vary between first and second voltage levels, based on transitions of an input signal received from a first power domain that operates between the first and second voltage levels."  The Accused Products comprise this element.

384.    For example, AMD's Radeon RX 6600 comprises a level shifter. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter

385. For example, the level shifter of AMD's Radeon RX 6600 comprises a first circuit (an example of which is annotated in red), which provides differential outputs that vary between first and second voltage levels, based on transitions of an input signal (an example of which is annotated in yellow). See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)

386.    Differential outputs are provided through N137 and N144.

387.    VSSd corresponds to a voltage level.

388.    V_SRCa corresponds to a voltage level.

389.    The IN signal is an input signal.

390.    Differential outputs are provided based on transitions of the IN signal.

391.    The IN signal is received from a first power domain that operates between the first and second voltage levels.

392.    The IN signal is the output of NAND2b, which operates between VSSd and V_SRCa. See:



AMD's Radeon RX 6600 circuit diagram of DO_Predriver



AMD's Radeon RX 6600 circuit diagram of NAND2b

393.    Claim 1 of the '588 Patent recites: "a second circuit having first and second driver circuits coupled to a first voltage rail configured and arranged to operate at the second voltage level, the first driver circuit being coupled to a first one of the differential outputs and the second driver circuit being coupled to a second one of the differential outputs."  The Accused Products comprise this element.

394.    For example, the level shifter of AMD's Radeon RX 6600 comprises a second circuit (an example of which is annotated in blue), which has first and second driver circuits (examples of which are both annotated in light green) that are coupled to a first voltage rail configured and arranged to operate at the second voltage level, the first driver circuit being coupled to a first one of the differential outputs and the second driver circuit being coupled to a second one of the differential outputs. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)

395.    P135 and P136 form a driver circuit.

396.    P135 and P136, together, are coupled to one of the differential outputs, i.e., the differential output corresponding to N137.

397.    P135 and P136, together, are coupled to a voltage rail which operates at V_SRCa.

398.    P145 and P146 form a driver circuit.

399.    P145 and P146, together, are coupled to one of the differential outputs, i.e., the differential output corresponding to N144.

400.    P145 and P146, together, are coupled to a voltage rail which operates at V_SRCa.

401.    Claim 1 of the '588 Patent recites: "a third driver circuit coupled to a second voltage rail configured and arranged to operate at a third voltage level, the second voltage level being between the first and third voltage levels." The Accused Products comprise this element.

402.    For example, the level shifter of AMD's Radeon RX 6600 comprises a third driver circuit (an example of which is annotated in purple), which is coupled to a second voltage rail configured and arranged to operate at a third voltage level, the second voltage level being between the first and third voltage levels. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)

403.    P138 and P139 form a driver circuit.

404.    P138 and P139, together, are coupled to a voltage rail which operates at VDDo.

405.    The voltage level V_SRCa is between the voltage level VSSd and the voltage level VDDo.

406.    Claim 1 of the '588 Patent recites: "the third driver circuit being and configured and arranged with the first and second circuits to level-shift the input signal from the first power

domain to an output signal on a second power domain that operates between the second and third voltage levels by . . ."  The Accused Products comprise this element.

407.    For example, the level shifter of AMD's Radeon RX 6600 comprises a third driver circuit (an example of which is annotated in purple) configured and arranged with the first circuit (an example of which is annotated in red) and the second circuit (an example of which is annotated in blue) to level-shift the input signal (an example of which is annotated in yellow) from the first power domain to an output signal (an example of which is annotated in green) on a second power domain that operates between the second and third voltage levels. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)

408.    The output signal is on a second power domain that operates between the second and third voltage levels (V_SRCa and VDDo).

409.    Claim 1 of the '588 Patent recites: "driving an output circuit at the second voltage level in response to the input signal being at the first voltage level, driving the output circuit at the third voltage level in response to the input signal being at the second voltage level." The Accused Products comprise this element.

410.    For example, the level shifter of AMD's Radeon RX 6600 comprises an output circuit (an example of which is annotated in orange), which is driven at the second voltage level in response to the input signal being at the first voltage level and driven at the third voltage level in response to the input signal being at the second voltage level. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)



AMD's Radeon RX 6600 circuit diagram of Level Shifter (annotated)

411.    P234 and N235 form an output circuit.

412.    The output circuit is driven at V_SRCa in response to the input signal being at VSSd.

413.    The output circuit is driven at VDDo in response to the input signal being at V_SRCa.

414.    Claim 1 of the '588 Patent recites: "wherein the first driver circuit includes first and second transistors, the first transistor having its gate driven by the first one of the differential outputs and having its source and drain coupled between the second voltage level and an output terminal, the second transistor having its gate driven by the second voltage level and having its

source and drain coupled between the first one of the differential outputs and the output circuit." The Accused Products comprise this element.

415.    For example, the level shifter of AMD's Radeon RX 6600 comprises a first driver circuit, which includes first and second transistors, the first transistor having its gate driven by the first one of the differential outputs and having its source and drain coupled between the second voltage level and an output terminal, the second transistor having its gate driven by the second voltage level and having its source and drain coupled between the first one of the differential outputs and the output circuit. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter

416.    The first driver circuit includes P135, a first transistor, and P136, a second transistor.

417.    P135 has its gate driven by one of the differential outputs, which corresponds to N137.

418.    P135 has its source and drain coupled between V_SRCa and an output terminal.

419. P136 has its gate driven by V_SRCa.

420. P136 has its source and drain coupled between one of the differential outputs, which corresponds to N137, and the output circuit.

421. Claim 1 of the '588 Patent recites: "the second driver circuit includes third and fourth transistors, the third transistor having its gate driven by the second one of the differential outputs and having its source and drain coupled between the second voltage level and the third driver circuit, the fourth transistor having its gate driven by the second voltage level and having its source and drain coupled between the second one of the differential outputs and the third driver circuit." The Accused Products comprise this element.

422. For example, the level shifter of AMD's Radeon RX 6600 comprises a second driver circuit, which includes third and fourth transistors, the third transistor having its gate driven by the second one of the differential outputs and having its source and drain coupled between the second voltage level and the third driver circuit, the fourth transistor having its gate driven by the second voltage level and having its source and drain coupled between the second one of the differential outputs and the third driver circuit. See:



AMD's Radeon RX 6600 circuit diagram of Level Shifter

423.    The second driver circuit includes P146, a third transistor, and P145, a fourth transistor.

424.    P146 has its gate driven by one of the differential outputs, which corresponds to N144.

425.    P146 has its source and drain coupled between V_SRCa and the third driver circuit.

426.    P145 has its gate driven by V_SRCa.

427.    P145 has its source and drain coupled between one of the differential outputs, which corresponds to N144, and the third driver circuit.

428.    Based on these representative allegations, AMD therefore infringes and continues to infringe the '588 Patent, based on the importation, sale, offer for sale, or use of the Accused Products which comprise each and every element of claim 1 of the '588 Patent and are made and continue to be made from the '588 Patent's patented processes.

429.    Accordingly, AMD has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '588 Patent under 35 U.S.C. § 271(a).

430.    In addition, AMD has indirectly infringed and continues to indirectly infringe the '588 Patent under 35 U.S.C. § 271(b).

431.    AMD indirectly infringes the '588 Patent because it has induced and continues to induce third parties, including as the Wafer and Board Manufacturing Facilities, ATMP Facilities, and Shipping Facilities, AMD customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

432.    AMD induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation

of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

433.    For example, AMD publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products.  As another example, AMD facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to AMD customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

434.    AMD took the above actions intending to cause infringing acts by these third parties.

435.    AMD has known of the '588 Patent since at least May 11, 2023, when NXP sent AMD the Notice Letter, which identified the '588 Patent and was accompanied by evidence of use documents.

436.    If AMD did not know that the actions it encouraged constituted infringement of the '588 Patent, AMD was willfully blind as to its inducing infringement of others.  AMD subjectively believed that there was a high probability that others would infringe the '588 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

437.    Accordingly, AMD has indirectly infringed and continues to indirectly infringe the '588 Patent under 35 U.S.C. § 271(b).

438.    AMD's infringement of the '588 Patent has been and continues to be willful and egregious.

439.    AMD had knowledge of the '588 Patent and knew its actions constituted infringement of the '588 Patent, or at least subjectively believed that there was a high probability that the '588 Patent existed and took deliberate actions to avoid learning of the '588 Patent.

440.    AMD's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from AMD the damages sustained by Plaintiff as a result of these wrongful acts in an amount subject to proof at trial.

441.    AMD's infringement of the '588 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Nextech Semiconductor LLC asks this Court for an order granting the following relief:

A.    A judgment in favor of Plaintiff that AMD has infringed, either literally and/or under the doctrine of equivalents, the '202, '591, '889, '488, and '588 Patents;

B.    A judgment and order finding that AMD's infringement has been willful;

C.    Preliminary and/or permanent injunctions prohibiting AMD from further acts of infringement;

D.    Any other equitable relief to which Plaintiff is entitled;

E.    A judgment and order requiring AMD to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for AMD's infringement;

F.    A judgment and order requiring AMD to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

G.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees against AMD; and

H.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

DATED: March 6, 2026

Respectfully submitted,

**By:** */s/ Mark D. Siegmund*　　　　　　　
Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND
JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
Ari Rafilson
Texas Bar No. 24060456
Brett Mangrum
Texas Bar No. 24065671
**CHERRY JOHNSON SIEGMUND
JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
Email: wellerman@cjsjlaw.com

*Counsel for Plaintiff Nextech Semiconductor,
LLC*