[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEXTECH SEMICONDUCTOR, LLC,<br>PLAINTIFF,<br>v.<br>ADVANCED MICRO DEVICES, INC.<br>DEFENDANT. | NO: MO:26-CV-00080-DC-DTG<br>**JURY TRIAL DEMANDED** |

**NEXTECH'S MOTION TO DISMISS AMD'S [redacted] CLAIMS FOR FAILURE TO STATE A CLAIM**

[redacted]

## TABLE OF CONTENTS


I. FACTUAL BACKGROUND ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. Nextech Cannot Breach a Contract It Never Signed or Saw. ........ 3

1. Nextech Did Not Assent to [redacted]. ........ 4

2. [redacted] Obligations Did Not "Run With" the Patent. ........ 4

3. AMD Did Not Adequately Plead Any Equitable Claim to Bind Nextech. ........ 7

B. AMD Does Not Plausibly Plead Misappropriation of Trade Secrets. ........ 8

1. AMD Does Not Plausibly Identify Any AMD Trade Secret. ........ 8

2. AMD Does Not Plausibly Allege That Nextech Knew of [redacted] or Willfully Misappropriated its Trade Secrets. ........ 11

3. AMD Does Not Plead Sufficient Facts Showing [redacted] ........ 12

C. AMD's Paltry Prospective Business Relationship Claim Is Unsupported. ........ 14

1. The Claim Fails Because AMD Does Not Plausibly Allege Any Independently Tortious Conduct. ........ 14

2. AMD Does Not Plausibly Allege a Reasonable Probability of a Prospective Business Relationship. ........ 15

D. AMD's Tortious Interference With Contract Claim Fares No Better. ........ 16

1. AMD Did Not Plead a Breach of [redacted] Involving the [redacted]. ........ 16

2. AMD Does Not Plausibly Allege That Nextech Knew of [redacted] or Its Restrictions. ........ 17

3. AMD Does Not Plausibly Allege That Nextech Proximately Caused Any Breach or Injury. ........ 19

E. Even if Adequately Pled, the Tortious Interference Claims Are Preempted. ........ 20

IV. CONCLUSION ........ 20

[redacted]

## TABLE OF AUTHORITIES

**Cases**

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
521 F.3d 472 (5th Cir. 2008) ........ 17, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4, 7, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Cano v. State Farm Mut. Auto. Ins. Co.*,
425 F. Supp. 3d 779 (W.D. Tex. 2019) ........ 4

*Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*,
498 F. Supp. 3d 1080 (D. Minn. 2020) ........ 6

*Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*,
37 F.4th 1357 (8th Cir. 2022) ........ 6

*DataTreasury Corp. v. Wells Fargo & Co.*,
522 F.3d 1368 (Fed. Cir. 2008) ........ 5

*DataTreasury Corp. v. Wells Fargo & Co.*,
490 F. Supp. 2d 756 (E.D. Tex. 2007) ........ 5

*Div. One Foods, Inc. v. Pizza Inn, Inc.*,
No. 3:20-CV-02065-X, 2021 WL 3172176 (N.D. Tex. July 27, 2021) ........ 3

*El Paso Disposal, LP v. Ecube Labs Co.*,
766 F. Supp. 3d 692 (W.D. Tex. 2025) ........ 8, 16

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
No. 1:17-cv-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018) ........ 20

*GE Betz, Inc. v. Moffitt-Johnston*,
885 F.3d 318 (5th Cir. 2018) ........ 13

*Hollingshead v. Aetna Health Inc.*,
589 F. App’x 732 (5th Cir. 2014) ........ 12

*Ibe v. Jones*,
836 F.3d 516 (5th Cir. 2016) ........ 4

*IberiaBank Corp. v. Illinois Union Ins. Co.*,
953 F.3d 339 (5th Cir. 2020) ........ 3

[redacted]

*In re KrisJenn, Ranch, LLC*,
661 F. Supp. 3d 654 (W.D. Tex. 2023) .......... 5

*Miner, Ltd. v. Anguiano*,
383 F. Supp. 3d 682 (W.D. Tex. 2019) .......... 9

*Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*,
499 F. Supp. 3d 350 (W.D. Tex. 2020) .......... 18

*Mumfrey v. CVS Pharmacy, Inc.*,
719 F.3d 392 (5th Cir. 2013) .......... 16

*Nano-Proprietary, Inc. v. Canon, Inc.*,
537 F.3d 394 (5th Cir. 2008) .......... 15

*Paice LLC v. Hyundai Motor Co.*,
No. CIV. WDQ-12-0499, 2014 WL 5581045 (D. Md. Oct. 29, 2014) .......... 6

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
369 F. Supp. 3d 788 (W.D. Tex. 2019) .......... 14

*Providence Title Co. v. Truly Title, Inc.*,
732 F. Supp. 3d 656 (E.D. Tex. 2024) .......... 9, 10, 12, 13

*Providence Title Co. v. Truly Title, Inc.*,
No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026) .......... 12

*Reingold v. Swiftships, Inc.*,
126 F.3d 645 (5th Cir. 1997) .......... 10, 11

*Smith Int'l, Inc. v. Egle Grp., LLC*,
490 F.3d 380 (5th Cir. 2007) .......... 3

*StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*,
426 F. Supp. 3d 311 (E.D. Tex. 2019) .......... 20

*Sw. Energy Prod. Co. v. Berry-Helfand*,
491 S.W.3d 699 (Tex. 2016) .......... 13

*Ureteknologia De Mexico S.A. De C.V. v. Uretek (USA), Inc.*,
No. H-16-2762, 2018 WL 4680603 (S.D. Tex. Sept. 28, 2018) .......... 18

*WickFire, L.L.C. v. Woodruff*,
989 F.3d 343 (5th Cir. 2021) .......... 14

*Wolf v. Cowgirl Tuff Co.*,
No. 1:15-CV-1195-RP, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016) .......... 19

[redacted]

**Statutes**

18 U.S.C. § 1836(b) .......... 8

18 U.S.C. § 1839(3) .......... 8

18 U.S.C. § 1839(5) .......... 8, 11

TEX. CIV. PRAC. & REM. CODE § 134A.007 .......... 20

Texas Uniform Trade Secrets Act .......... 20

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......... 1, 2, 3

[redacted]

AMD received [redacted]. Nextech properly pled that [redacted] in its Complaint in this case, and was not subject to any restrictions on its ability to do so. Nor was Nextech aware of any restrictions AMD may have negotiated with third parties regarding their ability, had they been the plaintiff in this case, to do the same. Wishing it could avoid these inconvenient facts, AMD has asserted a host of wasteful and misguided counterclaims against Nextech that stem from [redacted] it entered into [redacted]. *See* Dkt. 25 at ¶¶ 94–100. AMD wishes to use [redacted] it entered with a third party, that did not bind future owners of the corresponding patents, as a release of its liability for willful infringement or past damages, even though the same facts allegedly shielded by [redacted] will be revealed in discovery in this case regardless of their inclusion in Nextech's Complaint or the existence of [redacted]. The Court should reject AMD's overreach. The facts are the facts, Nextech is not a party to any [redacted], and AMD cannot cure that fatal flaw in its counterclaims by scattering conclusory tort allegations against the wall and hoping one sticks. AMD's allegations do not state a claim for a contract or tort action against Nextech, and Nextech thus respectfully moves to dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. FACTUAL BACKGROUND

As alleged by AMD, AMD entered into [redacted] with non-party [redacted] Dkt. 25 at ¶ 14. Paragraphs 13 through 29 of AMD's counterclaims contain only allegations about [redacted] and [redacted] it entered with AMD. AMD nowhere alleges that Nextech is a party to that [redacted] that Nextech is an affiliate or successor-in-interest of [redacted] or its legal obligations generally, or that Nextech is a third-party beneficiary of [redacted]. AMD alleges that [redacted] was, by its terms, [redacted] *id.* at ¶ 35, but nowhere alleges that a mere [redacted] would qualify under that provision of [redacted].

Critically, Nextech *has never even seen* the subject [redacted], and AMD does not allege

[redacted]

otherwise, despite alleging throughout its complaint that Nextech was somehow bound by it or aware of its terms. *See, e.g.*, Dkt. 25 at ¶¶ 36, 107. Worse still, AMD has continued to treat [redacted] as something principals for Nextech *cannot* see. When Nextech asked AMD to produce it on May 18th, AMD insisted on entering a protective order first, and then ignored repeated requests for [redacted] production. Ex. A. And once AMD finally produced it on June 26th, it did so on an "outside attorney's eyes only" basis. Ex. B.

[redacted] AMD acknowledges that the Asserted Patents were assigned to Nextech. Dkt. 25 at ¶ 30. Nextech filed this action for patent infringement, and alleged that AMD [redacted] of its infringement, and has thereafter willfully infringed, based on [redacted] to AMD and the accompanying evidence of use (collectively, the "[redacted] *See, e.g.*, Dkt. 1 at ¶¶ 116–123; 180. Nextech also alleged that, to its knowledge, [redacted] *Id.* at ¶¶ 124–125. AMD alleges that it provided [redacted]. *See* Dkt. 25 at ¶¶ 24–29. But the focus of Nextech's [redacted] allegations is, naturally, on the [redacted] attempting to refute it.

Prior to filing its counterclaims, AMD never reached out to Nextech about the alleged breach of [redacted] or misappropriation of its trade secrets. AMD has never moved to seal or asked Nextech to remove the allegations from its Complaint that AMD contends were made in contravention of [redacted]. And, as mentioned above, AMD did not even provide Nextech's outside counsel with [redacted] Nextech has allegedly breached until June 26th.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the pleadings. To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter, accepted as true, to "state a claim for relief that is plausible on its face" and not merely possible or conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a Rule 12(b)(6) motion, the Court accepts well-pleaded facts as true and views them in the light most favorable to the nonmovant, but it does not credit "legal conclusions couched as factual allegations," threadbare recitals of elements, or conclusory assertions masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also Twombly*, 550 U.S. at 555. A claim is facially plausible only when the pleaded factual content allows the Court to draw the reasonable inference that the counter-defendant is liable for the misconduct alleged; allegations that are merely consistent with liability, speculative, or devoid of factual enhancement do not meet this standard. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 557.

In a case like this where the counterclaims depend on a written contract, the Court may interpret the underlying contract and "draw on its judicial experience and common sense" in determining whether the contract precludes recovery on its face. *See IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345, 348 (5th Cir. 2020) ("Where an insurance contract precludes recovery under its very terms, dismissal is proper."). "When a contract is not ambiguous, the court will construe the contract as a matter of law." *Div. One Foods, Inc. v. Pizza Inn, Inc.*, No. 3:20-CV-02065-X, 2021 WL 3172176, at *1 (N.D. Tex. July 27, 2021) (quotations omitted).

## III. ARGUMENT

### A. Nextech Cannot Breach a Contract It Never Signed or Saw.

Under Texas law, the elements of a breach-of-contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). The existence of a

**FILED UNDER SEAL**

valid contract requires "(i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding." *Cano v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 3d 779, 789–90 (W.D. Tex. 2019).

Because AMD fails to plead facts establishing either the existence of a valid contract between AMD and Nextech or any other basis for binding Nextech to [redacted], its counterclaim should be dismissed.

1. Nextech Did Not Assent to [redacted]

AMD alleges that Nextech breached [redacted] But Nextech is not a party to that agreement, and AMD pleads no facts showing otherwise. *See id.* at ¶¶ 86–87. Under basic principles of contract law, a party cannot be held liable for breaching an agreement to which it never assented. *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) ("Under Texas law, 'a party generally must be a party to a contract before it can be held liable for a breach of the contract.'"). Here, AMD seeks to impose contractual obligations on a non-signatory without alleging facts showing Nextech assented to [redacted]. The counterclaims do not allege that Nextech participated in negotiating [redacted], agreed to its terms, or otherwise manifested an intent to be bound. Absent assent, Nextech cannot be held to the agreement. Accordingly, AMD alleges no facts showing that Nextech became bound by [redacted], and its breach of contract claim fails as a matter of law and should be dismissed.

2. [redacted] Obligations Did Not "Run With" the Patent.

AMD falsely asserts that [redacted] with respect to the Asserted Patents, [redacted] *See* Dkt. 25 at ¶ 89. The Court need not accept this legal conclusion as true. *Iqbal*, 556 U.S. at 678. And the legal conclusion itself—that a mere

[redacted]

assignee of a patent "acquires" the personal contractual obligations of the assignor in the absence of any contractual language saying so—is demonstrably incorrect on the pleaded facts.

AMD incorrectly conflates Nextech's acquisition of certain patent rights with an assignment of [redacted] contractual position [redacted]. AMD alleges that [redacted] is a valid, binding, and enforceable contract" that [redacted] *id.* at ¶¶ 86–89, but it pleads no facts establishing that Nextech succeeded to or assumed [redacted] contractual rights and obligations [redacted]. Boilerplate [redacted] language [redacted] does not expand an agreement's obligations to nonparties who merely acquire a related asset. The Western District of Texas has recognized [redacted] that "[t]he phrase, 'its successors and assigns' unambiguously refers to the successors and assigns of [the parties] to the specific contract…." *In re KrisJenn, Ranch, LLC*, 661 F. Supp. 3d 654, 673 (W.D. Tex. 2023). Likewise, the court in *DataTreasury Corp. v. Wells Fargo & Co.* held that the patent purchaser was not a "successor" because it "did not merge with or acquire" the contracting entity and, absent an express or implied assumption, did not become bound by the agreement through patent acquisition alone. 490 F. Supp. 2d 756, 764 (E.D. Tex. 2007), *aff'd*, 522 F.3d 1368 (Fed. Cir. 2008). AMD alleges no facts suggesting that Nextech merged with [redacted] or expressly or impliedly assumed [redacted] obligations under [redacted]. Where the necessary elements for an obligation to "run" with patent are absent, the agreement remains personal to the original contracting parties. *See KrisJenn, Ranch*, 661 F. Supp. 3d at 673; *Datatreasury*, 490 F. Supp. 2d at 764.

Similarly, patent assignees do not automatically assume the assignor's separate contractual obligations absent an express assumption or other basis for privity. The Federal Circuit in *DataTreasury* explained that legal encumbrances that may "run with the patent" concern rights

[redacted]

tied to the actual use of a patent, such as "the right to use the patented product," not collateral contractual obligations such as "a duty to arbitrate." 522 F.3d at 1372–73. And district courts have expressly extended *DataTreasury*'s reasoning [redacted]. *See Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 498 F. Supp. 3d 1080, 1091 (D. Minn. 2020) ("[P]rocedural terms in an agreement, such as an arbitration clause or a confidentiality provision, do not run with a patent when a party assigns that patent because those terms do not involve the right to use a patent"), *aff'd*, 37 F.4th 1357 (8th Cir. 2022); *Paice LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 5581045, at *5 (D. Md. Oct. 29, 2014).

Moreover, AMD never pleads that Nextech *agreed* to assume [redacted] or its restrictions, nor does it point to any provision [redacted] dictating that [redacted] obligations automatically attach to future patent owners. That omission is dispositive. [redacted] separate contractual obligations [redacted] arise from those parties' agreement and mutual assent, not from ownership or use of the asserted patents. An assignee of a patent acquires the rights conveyed in the assignment, but does not become bound by the assignor's independent contractual commitments absent an express assumption or some other recognized basis for imposing liability. [redacted]

Indeed, AMD could have, but apparently did not, specifically negotiate contractual language within [redacted] that would have required [redacted] to transfer its obligations to future patent owners like Nextech. As the *Paice* court explained, "parties to a contract are free to negotiate how and when the agreement will be binding on future co-owners of a patent." 2014 WL 5581045, at *5. [redacted] where the parties to the agreement contracted that [redacted] AMD cannot establish that [redacted] binds Nextech.

[redacted]

### 3. AMD Did Not Adequately Plead Any Equitable Claim to Bind Nextech.

AMD alternatively alleges that Nextech should be "equitably estopped from denying the applicability of [redacted]" because Nextech relies on [redacted] and allegedly seeks the benefit of [redacted] Dkt. 25 at ¶ 90. But AMD never clearly explains what estoppel theory it intends to invoke or how that theory would bind Nextech to [redacted] it never signed. Instead, AMD simply concludes that Nextech somehow became bound by [redacted] because it later acquired certain patents from [redacted] Such conclusory allegations are insufficient to salvage AMD's breach of contract claim. *Iqbal*, 556 U.S. at 678–79.

AMD's allegations also do not satisfy the requirements of any cognizable estoppel theory. First, AMD pleads no facts showing that Nextech had actual knowledge of [redacted] or any of its [redacted] A party cannot knowingly seek or obtain a contractual benefit from an agreement of which it is unaware. Second, AMD's allegations make no sense on their own terms. AMD claims that Nextech should be estopped from denying the applicability of [redacted] but alleges only that Nextech seeks the "benefit" of relying on the [redacted] allegedly *covered* by [redacted] No cognizable estoppel theory binds a third party to another's contract simply because the third party relies on subject matter that is incidentally addressed in the contract. AMD does not allege that Nextech seeks to enforce [redacted] or assert claims that must be determined by reference to it. Nextech's claims arise under federal patent law, not [redacted] And since Nextech seeks no relief under [redacted], invokes no rights created by [redacted], and requires no interpretation of [redacted] to bring its infringement claims, it has not invoked [redacted] in any way that could create estoppel. Accordingly, even under the most generous reading, AMD's estoppel allegations amount to little more than the conclusory assertion that Nextech should be bound by [redacted] simply because it later acquired patents [redacted]. That is not a plausible basis to impose contractual obligations on a non-signatory.

[redacted]

**B. AMD Does Not Plausibly Plead Misappropriation of Trade Secrets.**

Without a viable contract claim, AMD tries to convert the same allegations into a vague trade-secrets claim that is equally unavailing. To state a claim under the Defend Trade Secrets Act ("DTSA"), AMD must plead facts plausibly showing "(1) the existence of a trade secret; (2) that the trade secret was misappropriated; and (3) that the misappropriated trade secret was used without authorization." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025); *see also* 18 U.S.C. §§ 1836(b), 1839(3), (5). The DTSA does not protect every category of confidential or business-sensitive information. It only protects trade secrets, meaning information for which the owner has taken reasonable measures to maintain secrecy and that derives independent economic value from not being generally known, and that is not readily ascertainable through proper means by another person who can obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3). As demonstrated below, AMD fails to identify a viable trade secret, or plausibly allege misappropriation, unauthorized use, or damages.

1. <u>AMD Does Not Plausibly Identify Any AMD Trade Secret.</u>

AMD's trade-secret theory fails at the threshold because it does not identify which AMD trade secret Nextech allegedly acquired, disclosed, or used with sufficient particularity. While AMD identifies certain categories of information that it contends constitute its trade secrets in a non-exclusive list, its pleading never connects those groups of trade secrets to the purported acts of misappropriation by Nextech. Dkt. 25 at ¶ 102. Instead, AMD relies on broad and generalized statements about Nextech allegedly relying on or disclosing [redacted] in its Complaint, including [redacted] Dkt. 25 at ¶¶ 108–9. But AMD's counterclaims blur the distinctions between the [redacted], and fail to bridge the gap between the trade secrets AMD alleges it owns and the information it contends Nextech misappropriated.

[redacted]

This is critical, since only a subset of [redacted] could even *potentially* be considered an AMD trade secret. The only [redacted] Nextech relied upon in its Complaint, or could have plausibly used [redacted] was the [redacted] *See* Dkt. 1 ¶¶ 16, 116–23, 180. And AMD cannot plausibly allege that the [redacted], contained AMD's trade secrets. Even [redacted] only [redacted] which excludes the [redacted] *See* Ex. B at 1. Thus, claims based on the [redacted] are facially implausible.

Moreover, even with respect to the [redacted] and the related information that at least belonged to AMD, AMD largely assumes, rather than plausibly alleges, that the [redacted] constituted protectable trade secrets. Not all confidential information qualifies as a trade secret, and the existence of [redacted] does not transform otherwise non-trade-secret information into one. *See Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 664 (E.D. Tex. 2024) ("[B]usiness information is not necessarily a trade secret simply because it is confidential."). The DTSA requires more than confidentiality: the information must derive independent economic value from its secrecy and be subject to reasonable measures to maintain that secrecy. *Id.*

AMD's allegations here are not compatible with that standard. Deriving independent economic value from secrecy means that the owner maintains a competitive advantage from the mere fact that its competitors do not have access to the information. *See Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 703 (W.D. Tex. 2019). Here, the purported trade secrets consisted of [redacted]. Dkt. 25 at ¶¶ 26–27, 108–09. Far from information

[redacted]

that AMD wanted to keep secret from its competitors, this is information AMD [redacted]. Far from deriving value from its secrecy, this information derived value from its *disclosure*, since it purported to [redacted]. AMD alleges that the information had independent value on the basis of its potential use by litigation adversaries, *id.* at ¶ 104, but the [redacted]. AMD cannot plausibly contend that it derives a competitive advantage from keeping secret its own [redacted]

But more fundamentally, even taking all of the factual allegations AMD pled as true about the potential use of this information by litigation adversaries, *id.*, those allegations cannot, as a matter of law, supply the "independent value" required of a trade secret. A trade secret's value "must be derived *from the fact that the information is secret*," as in the case of a secret recipe, formula, or manufacturing method that, by its very secrecy, differentiates a product from its competitors. *See Providence Title*, 732 F. Supp. 3d at 664 (emphasis added). But even confidential business information "does not have 'independent economic value' if its value depends upon an additional factor"—like whether a third party succeeds in exploiting it. *Id.* at 666.

In *Providence Title*, the Court discussed a trade secret boat mold, which itself was valuable because "[w]ithout anything more, the possessor could make and sell ship hulls." *Id.* at 665 (citing *Reingold v. Swiftships, Inc.*, 126 F.3d 645 (5th Cir. 1997)). Then the Court contrasted that clear trade secret with the confidential information identified by the plaintiff—information about the finances and employee salaries at various company branches. *Id.* The Court determined that the only value the plaintiff identified from that information was "contingent on additional factors." *Id.*

[redacted]

at 666. While the financial information could allegedly be used by a competitor as a roadmap to poach employees or target specific markets where the plaintiff was succeeding, that value was contingent on a wholly distinct set of activity for which the confidential information was merely an aid. Thus, the defendant "could not reap an economic benefit by merely obtaining and possessing" the alleged trade secrets, and they lacked independent value. *Id.*

The information identified by AMD here is just like the latter, and nothing like the boat mold in *Reingold*. AMD does not, and could not, allege that merely obtaining [redacted]). Instead, the only alleged value to a litigation adversary is "contingent on additional factors"—[redacted]. Thus, as a matter of law, the [redacted] are not trade secrets.

2. <u>AMD Does Not Plausibly Allege That Nextech Knew of [redacted] or Willfully Misappropriated its Trade Secrets.</u>

AMD's allegations are deficient for an additional reason: AMD pleads no nonconclusory facts making it plausible that Nextech knew, or had reason to know, that any information it allegedly received constituted AMD trade secrets or was subject to limitations on its use, much less that Nextech willfully intended a breach of those restrictions. The DTSA's definition of "misappropriation" requires facts showing that the accused party knew or had reason to know that the information was acquired through improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use. 18 U.S.C. § 1839(5). AMD simply asserts, "upon information and belief," that Nextech acquired information [redacted] and knew it had been disclosed under [redacted] and had restrictions [redacted]. Dkt. 25 at ¶¶ 107, 113. But the Court need

[redacted]

[redacted] credit this pure recitation of a necessary element of the claim. *Iqbal*, 556 U.S. at 678. And given AMD's own allegations that [redacted] was between [redacted] and the absence of any factual allegations that Nextech ever saw, received, or learned of [redacted], AMD's assertion that Nextech knew or should have known of the purported restrictions is unsupported and implausible even assuming the facts as pled.

3. AMD Does Not Plead Sufficient Facts Showing Actual Use of the [redacted]

AMD's allegations also fail because they do not plausibly plead actual disclosure or use of the [redacted] the only information that could arguably constitute AMD trade secrets, as discussed above. To succeed on a DTSA claim, a plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." *Providence Title*, 732 F. Supp. 3d at 663, *aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026).

First, the Court need not blindly accept as true AMD's conclusory allegation that Nextech [redacted] the [redacted] in Nextech's Complaint, when it is just demonstrably false on its face. *See* Dkt. 25 at ¶ 109. *See Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." (quotation omitted)). The only reference to the [redacted] in the Complaint is a high-level observation that they occurred—that [redacted] *E.g.*, Dkt. 1 at ¶ 124. AMD never alleges—[redacted]—that the mere existence of the [redacted]

[redacted]

Moreover, for many of the same reasons that the [redacted] are not trade secrets in the first place as discussed above, AMD's theory that Nextech "used" them, Dkt. 25 at ¶ 108, is implausible on its face. By AMD's own allegations, the supposed trade secrets consisted of [redacted]. Such materials would tend to undermine, not support, the [redacted] against AMD. AMD identifies no allegation in Nextech's Complaint that depends on the substance of AMD's confidential [redacted], and pleads no specific facts making it plausible that Nextech would have used [redacted], in support of them. Given the inherent implausibility of these backwards allegations, the Complaint's sparse, conclusory detail fails to state a claim.

Relatedly, AMD did not plead any actual damages or harm sufficient to justify maintaining a suit for misappropriation. The DTSA "only permits a court to award damages for actual misappropriation, which requires actual use for a cause of action to accrue." *Providence Title Co.*, 732 F. Supp. 3d at 667–68 (citing *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018); *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016)). AMD alleges only that it "suffered damages, in an amount to be shown at trial," as a result of the alleged misappropriation. Dkt. 25 at ¶ 112. But AMD's theory of harm depends entirely on Nextech's supposed use of the trade secrets in this case, which is problematic for two reasons. First, it is premature, given that AMD has not yet actually been found liable for any infringement, willful infringement, or enhanced damages due to any use of the alleged trade secrets. Second, as alluded to above, the allegedly trade secret information is the exact sort of information that will inherently be disclosed through the natural process of this case, thus mooting any theoretical harm from the alleged misappropriation. AMD will have to present its [redacted] (and

[redacted]

supporting materials) in discovery and at trial, will have to produce its [redacted]. Thus, as a matter of law, AMD cannot prove any damages at trial from Nextech's "use" in litigation of information it was entitled to receive in discovery anyway.

**C. AMD's Paltry Prospective Business Relationship Claim Is Unsupported.**

In order to establish a claim of tortious interference with a prospective business relationship, the counterplaintiff must establish that "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 356 (5th Cir. 2021). As demonstrated below, AMD fails to plausibly allege that Nextech engaged in any independently tortious or unlawful conduct or that any business relationship was reasonably likely to occur, and therefore its tortious interference claim should be dismissed.

1. <u>The Claim Fails Because AMD Does Not Plausibly Allege Any Independently Tortious Conduct That Proximately Caused AMD Harm.</u>

To recover, AMD must show that Nextech's allegedly interfering conduct was independently tortious or wrongful. *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 794 (W.D. Tex. 2019). AMD identifies Nexetch's alleged misappropriation of trade secrets as the sole underlying tort. *See* Dkt. 25 at ¶ 130. Accordingly, this claim rises and falls with AMD's DTSA claim and fails for the same reasons discussed above. *See Providence Title*, 2026 WL 1346202, at *13 (holding that, for a derivative tortious interference claim "to survive summary judgment, Providence would need to show that a genuine issue of material fact remained as to an

[redacted] tort. … Because the other torts alleged by Providence cannot survive…these derivative claims were properly dismissed as well.”).

But more importantly, even if the Court accepted as true that the alleged conduct occurred and was independently tortious, AMD pleads no facts connecting that conduct (improper acquisition of confidential information) to the alleged harm (loss of a [redacted] relationship). At most, AMD alleges that Nextech used the [redacted]. *See* Dkt. 25 at ¶ 129. But even accepting those facts as true, it was [redacted]. The facts do *not* support a plausible inference that the mere fact of [redacted] (however improper) was itself the proximate cause of [redacted].

2. AMD Does Not Plausibly Allege a Reasonable Probability of a Prospective Business Relationship.

AMD also fails to plausibly allege a reasonable probability of a prospective business relationship with [redacted] Although AMD asserts that “there was a reasonable probability” that [redacted], Dkt. 25 at ¶ 127, that allegation merely parrots the legal standard and is unsupported by any factual enhancement. To state a claim, AMD must plead *facts* supporting a reasonable inference that a prospective business or contractual relationship was reasonably likely to occur; “[m]ore than mere negotiations must have taken place.” *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008) (citation omitted). AMD pleads only negotiations, with no facts suggesting that [redacted]. In fact, AMD’s own allegations suggest that the [redacted] *See* Dkt. 25 at ¶¶

[redacted]

25–27. [redacted] (*id.* at ¶ 16), [redacted], [redacted] If anything, AMD's allegations suggest [redacted] [redacted] [redacted] [redacted] Accordingly, AMD has failed to plausibly allege the existence of a prospective business relationship sufficient to support this claim.

**D. AMD's Tortious Interference With Contract Claim Fares No Better.**

A claim for tortious interference with an existing contract requires proof of four elements: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred." *Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 402 (5th Cir. 2013). Here, AMD asks the Court to infer knowledge, intent, breach, causation, and damages without the factual allegations necessary to make any of those elements plausible.

1. <u>AMD Did Not Plead a Breach of</u> [redacted] <u>Involving the</u> [redacted]

With respect to the [redacted] AMD's tortious-interference claim fails at the threshold because AMD does not plausibly allege that [redacted] breached [redacted]. A claim for tortious interference "must entail a breach of the contract in question." *El Paso Disposal*, 766 F. Supp. 3d at 722. As discussed previously, the [redacted] [redacted] [redacted] did not constitute [redacted] and thus had no restrictions on [redacted] disclosure of it. Ex. B at 1. Thus, as a matter of law, [redacted] did not breach [redacted] [redacted] by merely disclosing the [redacted] to Nextech.

As a result, AMD resorts to alleging that Nextech interfered with [redacted] by using [redacted]

[redacted]

[redacted] "for purposes prohibited by [redacted], including [redacted] Dkt. 25 at ¶ 120. But [redacted] was a contract between AMD and [redacted], and those use restrictions bound [redacted] not Nextech, as discussed further in Section III.A, *supra*. AMD cannot use a tortious interference claim as a workaround to impose contractual obligations on Nextech, a non-party.

Thus, to prove tortious interference by Nextech, AMD would have to at least prove that [redacted] breached the alleged [redacted] that Nextech supposedly induced it to breach. AMD pleads no such thing. Indeed, [redacted] did not file this lawsuit, [redacted]. AMD therefore cannot allege that [redacted] itself ever used the [redacted] in violation of [redacted]. Instead, AMD alleges only that Nextech relied on the [redacted] in a way that AMD believes *would have* violated [redacted] if [redacted] had done it, or Nextech had been a party to it. That is not enough. Put differently, AMD has not plausibly alleged that [redacted] breached the contractual provision Nextech supposedly induced it to breach. The alleged contractual restriction applied to [redacted] not Nextech. Without an underlying breach by [redacted] AMD's tortious interference claim fails as a matter of law with respect to the [redacted]

2. <u>AMD Does Not Plausibly Allege That Nextech Knew of</u> [redacted] <u>or Its Restrictions.</u>

To satisfy the intent element, a plaintiff must plausibly allege that the defendant had actual knowledge of the contract, or at least "knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008). But although a plaintiff need not prove that the defendant intended to injure it, they must also show that the defendant either "desire[d] to cause the consequences of his act" or "believe[d] that the consequences [were] substantially certain to result." *Id.* (citations omitted). Thus, knowledge of a contract's mere

[redacted]

existence is not enough; the defendant must also have "similar knowledge as to the plaintiff's . . . interest in the contracts" such that interference with those interests was intended or substantially certain to result. *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 350, 363–64 (W.D. Tex. 2020).

Courts have rejected similar claims even where the defendant, unlike Nextech here, was involved in the business dealings underlying the alleged contract. In *Ureteknologia*, the defendants participated in conduct that allegedly affected the contract at issue, yet the court granted summary judgment because there was no evidence they knew of the plaintiffs' contractual rights or the relevant agreement's purpose, terms, or restrictions. *Ureteknologia De Mexico S.A. De C.V. v. Uretek (USA), Inc.*, No. H-16-2762, 2018 WL 4680603, at *15 (S.D. Tex. Sept. 28, 2018).

AMD's claim here is even weaker. AMD alleges only "upon information and belief" that Nextech [redacted] Dkt. 25 at ¶ 118. But that conclusory assertion supplies no facts from which the Court could plausibly infer that Nextech knew [redacted] existed, understood [redacted] or restrictions, knew what categories of information—if any—[redacted] covered, knew of any limits on [redacted] use or disclosure of information, or had knowledge of AMD's asserted interest in [redacted]. Even if the Court accepted the conclusory allegation [redacted] come in all shapes and sizes. That single statement alone cannot establish that Nextech knew this *specific* [redacted] was not only active, but also [redacted] Nor does AMD plead facts showing that Nextech desired to interfere with any such interest or believed that interference was substantially certain to result. AMD alleges, in purely conclusory

[redacted]

terms, that Nextech [redacted] acted "willful[ly]" and "intentional[ly]." Dkt. 25 at ¶¶ 119, 121. But AMD pleads no facts showing that Nextech requested information protected by [redacted], directed [redacted] to violate [redacted], encouraged any breach, or otherwise acted with the requisite intent. Nor does AMD allege facts supporting that Nextech either desired to cause a breach or believed a breach was substantially certain to result from its conduct. *See Amigo Broad,* 521 F.3d at 490. Absent factual allegations supporting intent, AMD's tortious interference claim cannot survive.

3. <u>AMD Does Not Plausibly Allege That Nextech Proximately Caused Any Breach or Injury.</u>

In addition to the lack of underlying breach and willfulness, AMD also fails to plausibly plead proximate cause of any damages. AMD alleges only that Nextech's conduct [redacted] [redacted]'s alleged breach and that AMD "suffered damages." Dkt. 25 at ¶¶ 122–23. But Texas law requires more. To establish tortious interference, a plaintiff must allege facts showing that the defendant took an active role in persuading a party to breach a contract. "Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach." *Amigo Broad., LP.*, 521 F.3d at 493; *see also Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195-RP, 2016 WL 4597638, at *5 (W.D. Tex. Sept. 2, 2016). AMD pleads no facts showing that Nextech requested any confidential information from [redacted] directed [redacted] to breach any obligation, encouraged [redacted] to violate [redacted], or otherwise took an active role in causing the alleged interference. Instead, these allegations merely recite the elements of the claim without the required supporting factual content.

Moreover, for the same reasons discussed with respect to trade secrets, *supra* Section III.B.3., AMD has not plausibly alleged, and could not plausibly allege, any damages from Nextech's receipt of the [redacted] information that Nextech did not rely on,

[redacted]

would not have relied on ([redacted]), and in any case will be revealed in this case in the normal course prior to any theoretical damages accruing.

**E. Even if Adequately Pled, the Tortious Interference Claims Are Preempted.**

Finally, even if pled sufficiently, AMD's tortious interference claims are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"). The TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007. It was intended "to prevent inconsistent theories of relief for the same underlying harm," and "encompasses all claims based on the alleged improper taking of confidential business information"—that is, even information that may not qualify as a trade secret. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2018 WL 315753, at *4 (W.D. Tex. Jan. 5, 2018) (quotations omitted); *see also StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 338 (E.D. Tex. 2019) (applying TUTSA preemption to tortious interference claims).

Here, AMD incorporates its trade-secret allegations into both tortious interference claims. Dkt. 25 at ¶¶ 101, 115, 125. Both claims are based on allegations that Nextech [redacted], which AMD contends are trade secrets, in violation of [redacted]. *Id.* at ¶¶ 119–20; 129–30, 107–10. Thus, because both claims are dependent on the same alleged misappropriation of AMD's purportedly trade-secret and confidential information underlying AMD's DTSA claim, they are displaced by TUTSA and should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, AMD has failed to state plausible claims for breach of contract, misappropriation of trade secrets, and tortious interference, and its claims should be dismissed with prejudice.

[redacted]

DATED: August 6, 2026

Respectfully submitted,

By: /s/ Christopher S. Stewart

Bradley W. Caldwell (TX Bar No. 24040630)
bcaldwell@caldwellcc.com
Robert Seth Reich, Jr. (TX Bar No. 24088283)
sreich@caldwellcc.com
Hamad M. Hamad (TX Bar No. 24061268)
hhamad@caldwellcc.com
Aisha M. Haley (TX Bar No. 24139895)
ahaley@caldwellcc.com
Richard A. Cochrane (TX Bar No. 24116209)
rcochrane@caldwellcc.com
Xu Zhou (TX Bar No. 24121219)
xzhou@caldwellcc.com
CALDWELL CASSADY CURRY P.C.
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Mark D. Siegmund (TX Bar No. 24117055)
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas, 76710
Phone: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

William D. Ellerman (TX Bar No. 24007151)
Ari Rafilson (TX Bar No. 24060456)
Brett Mangrum (TX Bar No. 24065671)
CHERRY JOHNSON SIEGMUND JAMES PC
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
wellerman@cjsjlaw.com
arafilson@cjsjlaw.com
bmangrum@cjsjlaw.com

*Counsel for Plaintiff*
*Nextech Semiconductor, LLC*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system and by email.

*/s/ Christopher S. Stewart*
Christopher S. Stewart